**STATE of Missouri, Respondent,**

v.

**Charles C. STILLMAN, Appellant.**

No. 46123.

Supreme Court of Missouri, Division No. 1.

March 10, 1958.

Shaw & Smith, Clayton, for appellant.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Charles C. Stillman, defendant below, a tuck pointer by trade, was convicted of abortion and sentenced to three years in the penitentiary. The state's evidence was such that the jury reasonably could have found that on November 3, 1955, Betty Maibes went to defendant's home where defendant advised her to take certain medicine and used instruments and other devices upon her with the intent to produce a miscarriage, which was unnecessary to preserve her life or the life of an unborn child and which had not been advised as necessary by a duly-licensed physician. We shall refer to the details of the evidence where necessary to decide defendant's contentions.

Defendant's first two points may be considered together. They are that the trial court erred in admitting into evidence state's exhibit 3 and the witness Klemme's testimony concerning it, offered as tending to prove venue in St. Louis County, and in overruling defendant's motion for judgment of acquittal at the close of all the evidence because of the state's failure to show venue in St. Louis County.

Roy Klemme was the chief clerk in the St. Louis County clerk's office, and state's exhibit 3 was a plat of the City of Wellston. The court permitted the witness to state what the plat showed and to testify that, by the use of that exhibit and other record information available in the clerk's office, he could tell that 6200 Ella Avenue was in St. Louis County.

Even if the court erred in admitting the objected-to testimony of the witness Klemme and state's exhibit 3 (which we do not decide or further consider), defendant's contentions are wholly without merit. That is because the witness Klemme testified without objection that Wellston was in St. Louis County; defendant, on direct examination, testified that he lived at 6200 Ella Avenue in Wellston; and the prosecutrix testified that defendant's afore-described acts were committed at defendant's home at 6200 Ella.

Defendant next contends that the trial court erred in failing to declare a mistrial as a result of the circumstances here described. In his opening statement, the assistant prosecutor said that the state's evidence would show that the fetus which the prosecuting witness delivered was placed in a bag and dropped in a sewer in the City of St. Louis and was recovered from that sewer by the police department. State's witness, Robert Boaz, a police officer, testified that he made an investigation of this "abortion" and had talked with Betty Maibes and Marian Pope, at whose home Betty lived and where she was employed to care for the Pope children. The witness further testified without objection that, in connection with his investigation, he instructed an employee of the St. Louis Department of Streets and

Sewers to appear at the southeast corner of Burd and Ridge Avenues in the city and to there remove from a sewer at that location a "bag." He had testified also that Marian Pope was there present on that occasion. Defendant's objection to the question as to what the bag contained was sustained, and objections also were sustained as to anything Marian Pope may have said.

The prosecuting attorney was permitted to pursue the inquiry on the theory that he was attempting to, in some way, "tie in" or show the relevancy of the testimony so far adduced to avoid the objection which had theretofore been sustained that, in any event, the occurrence described was "too remote in point of time to have any bearing on the issues in this case." Whereupon the question was asked as to what occurred before the sewer department was called. The witness began his answer in such a way as to indicate that he was going to relate what someone told him and the court sustained defendant's objection thereto, stating that the objection was sustained as to the witness relating a conversation but not as to what occurred "other than conversation." The witness answered, "Well, I was—after my investigation I went to Burd and Ridge where I was informed there was a fetus in the sewer."

Thereupon the following occurred:

"Mr. Smith: No, just a moment. I am going to object to that and ask the jury—ask it be stricken and the jury be instructed to disregard it. In fact, I will ask for a declaration of mistrial. We have been through this objection enough times that I believe that this witness, who is a policeman, understands something concerning the rules of evidence; I feel that this last is a deliberate attempt to get what is improperly a matter that may not be before the—be in evidence, and I feel that it is so prejudicial that that prejudice may not be removed by a mere reprimand to disregard.

"The Court: The motion in the form of an objection to the answer is sustained. The balance of the motion is overruled. The objection was sustained as to that part of your testimony which starts out 'I was informed' or something like that.

"Mr. Smith: I ask that be stricken from the record.

"The Court: That may be stricken from the record, that portion of it."

Thereafter, upon establishing that he did not know the whereabouts of Marian Pope, the witness was excused.

We infer from the instant record that Marian Pope, who had been endorsed as a witness on the information, had told the police officer that she had thrown the bag containing the fetus in question into the sewer at Burd and Ridge. And, of course, if Marian Pope had been adduced as a witness, her testimony to that effect may have been relevant as tending to prove the crime charged, and, thus, defendant may not be charged with having erroneously failed to have objected to the part of the prosecutor's opening statement containing that proffer of evidence.

■ It is objectionable for an attorney, in his opening statement, to indicate that certain evidence will be adduced if he knows that such evidence would be inadmissible upon objection or that the only witness who might be able to furnish the evidence is not available. The difficulty with defendant's present position is that there is nothing in the record to show whether at the time the prosecutor made his opening statement he did or did not believe in good faith that Marian Pope was or was not available as a witness. If, for example, the prosecutor had known at the time he made his opening statement that he could not adduce evidence except by hearsay to establish the fact in question, he should not have made the statement. But if, for example, he, in good faith,

believed at the time he made his statement that Marian Pope would be available as a witness and if, in fact, he did not find that she was not available until later, then he might have legitimately attempted to make the proof by the best evidence then available, viz., hearsay which, if unobjected to, would have constituted evidence of probative value. In re Petersen's Estate, Mo., 295 S.W.2d 144, 149. It is true, also, however, that after a court has sustained an objection, one of the grounds of which was that the evidence called for would be based on the statement of another, a prosecutor should not thereafter attempt to obtain from the witness that same answer. The record does not show, however, that the prosecutor's question in the instant case indicated that he was calling for or suggesting to the police officer the same answer to which an objection had been sustained or an answer which either or both knew would be improper.

Consequently, upon the record before us, we cannot properly hold either that the prosecutor was in bad faith in including the matter complained of in his opening statement or that he intentionally brought about an answer which he knew the court had theretofore excluded. Under the circumstances, the trial court's prompt action in sustaining defendant's objection and ordering the objectionable part of the answer stricken from the record was sufficient. Especially so, in view of the fact that, as noted, there was already before the jury unobjected-to testimony that witness had called another to remove a "bag" from a certain sewer in connection with his investigation of an abortion.

Defendant next contends that the trial court erred in accusing his counsel, in the presence of the jury, of having wilfully delayed the trial of the case. The record shows that during the cross-examination of prosecuting witness, the following occurred:

"Q. (By Mr. Smith) What time did you leave home? A. I imagine about 6:00 o'clock, I guess.

"Q. Who did you leave there with? A. Marian Pope.

"Q. Anybody else? A. No.

"Q. Whose car did you leave in? A. We didn't leave in a car.

"Q. Where did you go when you left there? A. I don't remember. We went to meet Ron somewhere.

"Q. You don't remember where you met him? A. No.

"Q. Was that down there in the neighborhood in which you live that you went to meet him? A. Yes.

"Q. How far did you walk? A. I don't remember.

"The Court: Let's go ahead with the cross-examination, Mr. Smith.

"Mr. Smith: I just wanted to make a note as to that answer, if the Court please.

"The Court: Let's go ahead with the trial, unless you have finished.

"Mr. Smith: I have not finished. But I want to make a note * * *

"The Court: If you want to question this witness you proceed with your questioning right now.

"Mr. Smith: If the Court please, I am going to ask for a declaration of mistrial and a discharge—

"The Court: It is overruled.

"Mr. Smith: —and discharge of the jury.

"The Court: It is overruled. Are you through questioning this witness?

"Mr. Smith: I am not.

"The Court: Then if you don't proceed I will excuse the witness.

"Mr. Smith: Well, if the Court please, I am moving just as rapidly as I can. I have asked—

"The Court: That is not my impression. Now ask the next question.

"Q. (By Mr. Smith) Mrs. Maibes, could you give me any idea as to how far you walked to meet this boy that you called Ronnie? A. No, I couldn't.

"Q. Did you get in a car of his? A. Yes.

"Q. What kind of a car was this—

"The Court: I am going to excuse the jury. You return to your jury room. I am going to advise you as I did previously that during the trial of this case when you are in recess, all your recesses are to be taken in the jury room, you are not to discuss this case amongst yourselves or with anyone else, keep your mind completely open until you have heard the entire case. Would you please retire to the jury room? It is through this door and up a flight of stairs.

"(The following proceedings were had out of the hearing and presence of the jury:)

"The Court: All right. Now, Mr. Smith, I consider your acts, your actions a deliberate attempt to bait the Court; I consider them contemptuous and I hold you in contempt and I will fine you one hundred dollars. I will stay execution until the conclusion of this trial. And I want you to bear in mind that if you repeat those acts I intend to punish you for contempt."

Thereafter the record shows that defendant's counsel made an explanation that he was deliberate by nature and that not only had he not intended to delay the trial but that in fact he had not done so. The court took the position that counsel had been delaying the trial and informed him that he was not to further "stall the trial of this case." Defendant's further motion for mistrial both for the reason that he had not stalled the trial of the case and for the reason that it was inconceivable that the court could from then on grant a fair trial to defendant was overruled. The trial, after a short recess, proceeded.

We are concerned with what took place out of the jury's hearing only as it may enable us to better evaluate that which occurred in the jury's presence. If the conversation between court and counsel prior to and after the jury had been excused, together with the apparent abruptness with which the jury was excused, supports a possible inference that the trial judge's language and demeanor immediately prior to the jury's being excused may have been such as to have placed the defendant's counsel in a humiliating and shameful position before the jury and thereby to have prejudiced the cause of his client, any conclusion based upon such an inference would be speculative and conjectural. And while we recognize that we cannot very well gauge the atmosphere of a courtroom and the state of the tempers of the court and counsel from an examination of a cold record, still, so far as the instant record discloses, we find nothing which the court said or did, standing alone and apart from the manner in which it may have been said or done, which would justify us in holding that because of it defendant did not receive a fair trial. And, by the same token that we may not know of the manner in which, and the tone of voice in which, the trial court spoke with counsel, we also may not know the manner in which counsel acted or spoke which so irritated the trial judge as to cause him to excuse the jury and to fine counsel for contempt. While it would have been desirable for the trial court to have included in the record what undisclosed actions of counsel he considered as "a deliberate attempt to bait the court," nevertheless, we shall not assume that the trial court did not have sufficient reason to excuse the jury at that point and fine the attorney for contempt.

The court said in State v. Hudson, 358 Mo. 424, 426, 215 S.W.2d 441, 442: "Counsel must also be treated with scrupulous

fairness by the judge. The judge must never let his belief in the guilt or innocence of the accused be reflected in his treatment of counsel. The jury may draw conclusions from such treatment to the prejudice of the parties. However, the judge may properly correct, admonish or reprimand counsel during the course of a trial if such is justified provided the judge does it in a manner which does not subject counsel to contempt or ridicule, or which does not prejudice the party he represents with the jury." We hold, upon the record before us, the trial court did not so violate the rules above noted as to deprive defendant of a fair trial. We think, however, that what was said in State v. Montgomery, 363 Mo. 459, 464, 251 S.W.2d 654, 657, should here be repeated: "Under our system of jury trials, the judge before whom the trial is conducted has a deep responsibility for the orderly and dignified conduct of courtroom proceedings. When the issue is one which may imprison the defendant on trial in a criminal cause, the tension of the courtroom drama and the human frailties and emotional factors inevitably involved serve but to make the judge's task the more difficult. Order and decorum must be maintained. The factual inquiry must be conducted within the issues and at all times under the applicable rules of law. Even if counsel or others should be guilty of misconduct the judicial calmness and the dignity and the self-restraint and obvious impartiality of the judge must always be maintained and made manifest. The judge must not indicate a belief in either the guilt or innocence of the accused. Nor may he let such belief be reflected or even conjectured by the jury in his treatment of either counsel. We know that juries are inclined to draw conclusions and are quite sensitive to any indications of the judge's belief as to the merits of the issue being tried."

Defendant's final contention is that the trial court erred in permitting the state's counsel to make an improper jury argument. In his argument, counsel had suggested that it was "peculiar that Mrs. Maibes [the prosecuting witness] does not know anything about the day of November the 3rd except those things that are necessary to make a case here? She just totally doesn't remember anything else, and she comes in and gives us a poll parrot story that someone has told to her. Now, think about that for awhile. Think about what her testimony was. Think about the number of things that she didn't remember, or didn't want to remember." (Bracketed insert ours.)

The prosecutor in his closing argument directed the jury's attention to the foregoing argument by defendant's counsel and, in answer, said: "Call upon that in your own experiences of life and see if you can remember every detail between 5:00 and 7:00. But don't you think her memory was a little better than the defendant's when he couldn't even remember the date—." Thereupon an objection was made on the ground that the argument was improper because defendant's counsel had not talked about defendant's testimony in his opening argument and that therefore "The issue is not open to him." The court overruled the objection and the argument was not pursued.

There is no merit in the contention. Aside from the fact that in no event would the unfinished statement of counsel have been sufficiently prejudicial to justify a new trial, the argument begun was justified. It should be apparent that the fact that a specific portion of a defendant's or other witness's testimony has not been commented on by defendant's counsel in argument does not prevent opposing counsel from commenting upon that testimony in connection with his answer to an issue raised in defendant's argument. The issue raised by defendant's counsel was the memory of, as affecting the credibility of, the state's witness Betty Maibes, and it was perfectly proper in answering that argument to suggest to the jury that others, including the defendant, had not been able to remember details.

The one case cited by defendant, Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838, 844, has no application. The opinion there points out that usually a closing argument should be in rebuttal and thus the issues which are not discussed in a defendant's argument should not, within the trial court's discretion, be for the first time discussed in a plaintiff's closing argument.

As noted, we have found no prejudicial error in the matters raised by defendant and we find none in any of those record matters which we examine irrespective of whether preserved for review or urged on appeal.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.