STATE of Missouri, Plaintiff-Respondent,

v.

**William Nelson HICKS,
Defendant-Appellant.**

No. 9929.

Missouri Court of Appeals,
Springfield District.

March 25, 1976.

John C. Danforth, Atty. Gen., Robert H. House, Asst. Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Arthur S. Haseltine, Springfield, for defendant-appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Defendant was jury-convicted of first degree robbery (§ 560.120, V.A.M.S.) on a charge that he had feloniously taken money belonging to What-A-Burger, Incorporated, from the person of its employee, Bertha M. Maggard. The jury assessed punishment at seven years in prison; sentence and judgment were rendered accordingly. Prejudicial error committed in the presentation of the state's case requires reversal and remand for a new trial.

Inter alia, and without objection, the state in its opening statement declared: "Now you will also hear, I expect, evidence of threats made upon witnesses, namely, the witness Sheila McGinnis [fellow employee of Bertha M. Maggard] about testifying against the defendant. This happened—she has been contacted on more than one occasion. . . . on one of these occasions . . . she was threatened to be blown up if she didn't change her testimony."

On direct examination while Sheila McGinnis was testifying as a state's witness, the following occurred: "Q. Now after you testified at the preliminary hearing, and during the time this case has been pending in court, have you had occasion to receive any telephone calls . . . while you were at home? A. Yes, I have. Q. Have you been threatened? A. Yeah. Q. . . . [T]ell the jury . . . about one of the telephone calls you had at home[.] [Defense counsel]. . . . I'm going to object to any threats here unless they can be tied in to the defendant. This is only going to prejudice the jury against the defendant. Now if in fact they can tie it in to the defendant, then fine. I'm certain they cannot."

Following the foregoing a bench conference ensued between court and counsel. Although agreeing defendant was in jail at the time the alleged threats were made, and without assuring the court the state had any evidence associating defendant with the averred threats, the state's attorney argued that "the jury has a right to know . . . that the witness has been threatened [because the] rule is that by communicating threats directly or indirectly it is proof of guilty knowledge." In opposition, defense counsel asseverated that evidence of threats was inadmissible unless defendant was responsible therefor and that such testimony was going to "prejudice the jury against my client." The court agreed: "Of course, it would prejudice them all right," and announced to the jury there would be a fifteen-minute recess because "I'm going to have to go over a point of law."

At the expiration of the recess, the court told the jury: "The objection is sustained. The jury is instructed to disregard the question and also disregard the statement in the opening statement by the prosecuting attorney relative to any threats that were made to the witness McGinnis by some third party. The law on that is that threats are admissible in evidence if they are made by the defendant or made under his direction or supervision. There is no such evidence in this case." Immediately thereafter defense counsel moved for a mistrial "due to the prejudicial remarks in regard to threats [and because the] question had the effect of making the jury prejudiced against the defendant and no remarks by the judge will

erase this from their minds." The motion was denied. The prosecutor did not subsequently undertake to adduce evidence of threats against other witnesses, as suggested in the opening statement, nor attempt directly or indirectly to implicate defendant in the averred threats.

Defendant now contends the trial court abused its discretion by failing to grant the motion for mistrial because defendant was prejudiced by the opening statement of the prosecutor who, in bad faith, referred to threats made against witnesses which could not be connected to defendant; because defendant was prejudiced by questions and answers anent threats not made by defendant or with his acquiescence; and because the prejudicial effect of the statement, questions and answers could not be undone effectively by the trial court's sustention of the objection or by its verbal comments and instruction to the jury. The state counters with assertions that defendant cannot here complain of the opening statement because no objection thereto was made when it was uttered; with the anomalous argument that since the state has not found parochial authority on the subject, "facts concerning the threats made here are not plainly inadmissible in Missouri"; and with curial cliches that the extent and scope of a prosecutor's opening statement [*State v. Feger,* 340 S.W.2d 716, 724[14] (Mo.1960)] and the declaration of a mistrial over improper statements, questions and answers [*State v. Dennison,* 428 S.W.2d 573, 577[2] (Mo.1968)] repose largely within the broad discretion of the trial judge which was not abused in this instance.

██ In the opening statement, a prosecutor should not indicate certain evidence will be adduced if such evidence would be plainly inadmissible upon objection. *State v. Stillman,* 310 S.W.2d 886, 888[2] (Mo. 1958); *State v. Fenton,* 499 S.W.2d 813, 815[2] (Mo.App.1973). A prosecutor's obligation is not simply to obtain a conviction, but to see that justice is done [*Jackson v. State,* 465 S.W.2d 642, 647[7] (Mo.1971); *State v. Brooks,* 513 S.W.2d 168, 174[11] (Mo.App.1973)], and that the accused gets a fair and impartial trial. *State v. Taylor,* 508 S.W.2d 506, 514[13] (Mo.App.1974); *State v. Heinrich,* 492 S.W.2d 109, 114[8] (Mo.App.1973). Moreover, the prosecutor is duty bound to refrain from making statements and asking questions calculated to engender prejudice or excite passion against the defendant. He should carefully avoid injecting into a trial matters not proper for a jury's consideration which would add to the prejudice which the charge itself has produced in the jury's mind. *State v. Selle,* 367 S.W.2d 522, 530[22, 23] (Mo.1963). As often stated, trial courts may properly, and of necessity must, rely upon the good faith of prosecutors in making opening statements to the juries. *State v. Feger,* supra, 340 S.W.2d at 725. Until it appears such reliance is misplaced, we see no reason why defense counsel should not be afforded the same right as the trial court to rely upon the good faith of the prosecutor, particularly when, as here, the name of the witness who ostensibly can give testimony tending to prove an assertion made in the opening statement is endorsed on the information as a witness for the state, and there is no foreboding the prosecutor will not discharge his duties or that said witness cannot properly testify in support of the prosecutor's assurances as to what the proof will be. Therefore, defendant may not be charged with erroneously having failed to object to that part of the prosecutor's opening statement until it became evident the testimony going to prove the statement was improper and inadmissible. *State v. Stillman,* supra, 310 S.W.2d at 888.

██ If it be shown that an accused directly, or indirectly through a third person at the urging of the accused or with his knowledge and consent, destroys, suppresses or fabricates evidence, or by any means threatens or persuades a witness to give false testimony, such showing is properly receivable as evidence to establish the accused's guilt on the original charge and to show consciousness of guilt. *State v. Stapleton,* 518 S.W.2d 292, 297 (Mo. banc 1975); *State v. Seals,* 515 S.W.2d 481, 484[1] (Mo.

1974); *State v. Mason,* 394 S.W.2d 343, 344[2] (Mo.1965); *State v. Smith,* 355 Mo. 59, 64, 194 S.W.2d 905, 907[6] (Mo.1946); *State v. Mathews,* 202 Mo. 143, 148, 100 S.W. 420, 421[3] (1907). However, it is extremely elementary that one person is not answerable, civilly or criminally, for the misconduct of another sans a showing of the existence of some relationship or connection between the two which would render the former liable or responsible for the actions of the latter. 21 Am.Jur.2d, Criminal Law, § 131, p. 203. Consequently, if a person other than the accused threatens a witness to induce false testimony, then statements, questions and testimony concerning such threats are clearly improper and inadmissible if it cannot be shown that the threats were made at the request of the accused or with his consent and knowledge. Making statements, asking questions and offering evidence regarding threats against witnesses when the threats, directly or indirectly, cannot be associated with the defendant, may well form the basis for declaring a mistrial instanter, or for granting a new trial, or for reversal on appeal. *State v. Smith,* 19 N.C.App. 158, 198 S.E.2d 52, 53[1, 2] (1973); *People v. Walton,* 17 Mich. App. 687, 170 N.W.2d 315, 317 (1969); *People v. Perez,* 169 Cal.App.2d 473, 337 P.2d 539 (1959); *People v. Weiss,* 50 Cal.2d 535, 327 P.2d 527, 538[5] (banc 1958); *State v. Kosanke,* 23 Wash.2d 211, 160 P.2d 541, 543[4] (1945); *State v. Rogers,* 96 S.C. 350, 80 S.E. 620, 621 (1914); Annot., 62 A.L.R. 133, 136; 22A C.J.S. Criminal Law § 633, at pp. 486–488. As we shall see anon, the prosecuting attorney and the state's counsel are presumed to have known that this is the law.

 Many opinions repeat that although the prosecutor "in his opening statement, states facts which are not followed by proof, nevertheless, if he acts in good faith *and with reasonable grounds for supposing that he will be able to show the facts stated,* the statement is not error." (Our emphasis). *State v. Rowe,* 324 Mo. 863, 873, 24 S.W.2d 1032, 1037[5] (1930); *State v. Horn,* 498 S.W.2d 771, 774[1] (Mo.1973). But perusal of a host of such opinions

makes certain the italicized part of the above quotation is most often overlooked or wholly ignored, and that the good faith vel non of the prosecutor is advanced to disproportionate importance with the burden cast upon defendant to prove bad faith before any relief may be forthcoming. It would seem, however, that if improper statements or questions by the prosecutor result in actual and real prejudice to the defendant depriving him of a fair and impartial trial, the issue of whether the prosecutor acted in good faith or bad should be of slight concern in deciding the question of prejudice. Everyone is presumed to know the law. *Poe v. Illinois Cent. R. Co.,* 339 Mo. 1025, 1037, 99 S.W.2d 82, 89[8] (1936); *Hartley Realty Company v. Casady,* 332 S.W.2d 291, 295[4] (Mo.App.1960). A fortiori, all attorneys, including prosecuting attorneys, are presumed to know the law. *Succession of Jones,* 172 So.2d 312, 316[8] (La.App.1965); *Ramsey v. Hand,* 185 Kan. 350, 343 P.2d 225, 232[5] (1959); 31A C.J.S. Evidence, § 132(1), at p. 253. Also, prosecuting attorneys are presumed to have knowledge of all evidence in their possession. *People v. Yamin,* 45 Misc.2d 407, 257 N.Y.S.2d 11, 23[14] (1965). Therefore, even ceding subjective good faith to a prosecuting attorney in making unprovable statements and asking improper questions, yet if that faith be founded on a deliberate disregard of the quantum of the evidence in his possession or on ignorance of the law which he is presumed to know, it should not be concluded that the prosecutor acted on reasonable grounds for supposing he would be able to show the facts stated in his statement or suggested by his questions.

The instant matter is unlike those cases where the prosecuting attorney in his opening statement made a declaration of fact which he later could not or did not undertake to prove. In the present case the prosecutor transmitted improper and prejudicial information to the jury on two separate occasions, once in the opening statement and again when he questioned Sheila McGinnis. The subject matter was the same on both occasions. In the opening statement the jury was told "This happened

—[Sheila McGinnis] was threatened to be blown up if she didn't change her testimony," and in the state's case-in-chief the prosecutor elicited testimony from Ms. McGinnis that she had, in fact, received threatening telephone calls. Following this the court called a fifteen-minute recess "to go over a point of law" on the subject of the threats that had been made. Obviously the recess, albeit not intended for that purpose, served to permit the subject of threats to settle firmly into the collective mind of the jury. And while the trial court thereafter sustained the objection and charged the jury to disregard the question and the opening statement as to threats, the court's admonition, nevertheless, assumed that such threats had actually been made "by some third party." It seems apparent from the record that when the prosecutor made the opening statement and adduced the testimony of the threats, he was aware that defendant had not personally threatened the witness because he was in jail when the threats were made. Also, the prosecutor knew or should have known no evidence was available to inculpate defendant directly with the threats, and he presumably knew under the law that the statement and evidence of threats were improper and inadmissible without a showing that the threats were made indirectly at defendant's request or with his consent and knowledge.

The trial commenced with the prosecutor telling the jury, as a matter of fact, that a state witness had been "threatened to be blown up if she didn't change her testimony." From this the jury must have entered upon trial with that belief, undoubtedly damaging to defendant in their minds. Then to rekindle that belief and to cement the subject permanently within their knowledge, the jury was exposed to the threat-testimony of Sheila McGinnis, to the soaking-in influence of the 15-minute recess, and to the court's attention-getting explanation which assumed the reality of the threats. The fact that the evidence failed to show that defendant was the culprit would not remove the impression that some one, with enough interest in defendant to make threats upon state's witnesses, had knowledge of defendant's guilt of the robbery charge against him. Cf. *State v. Donell,* 18 S.W.2d 53, 57 (Mo.1929). All who have been subjected, willingly or unwillingly, to explanations of a jury's reasoning after the fact, realize how difficult it is for the trial court, by a ruling or explanation, to erase from the memories of the jurors the evil of illegitimate statements and inadmissible evidence, or to assuage a jury's combined impression that it is being deprived of evidence it should know about on a mere technicality of the law. *State v. Fenton,* supra, 499 S.W.2d at 816–817.

 This tribunal, as it must, recognizes as the state stresses, supra, that the extent and scope of a prosecutor's opening statement are largely within the broad discretion of the trial judge, and that the same is true in connection with a declaration of a mistrial. However, we likewise take cognizance that in both situations the trial court's discretion is reviewable on appeal for manifest abuse thereof resulting in prejudice to an accused in a criminal trial, and that the rule of deference is not to be employed as a device to gloss over prejudicial errors committed in discretionary matters. *State ex rel. State Highway Commission v. Heim,* 483 S.W.2d 410, 414 (Mo.App. 1972). It is difficult to conceive of a more harmful assertion than to pronounce, as a fact, that witnesses had been threatened and that one in particular had been threatened to be blown up if she didn't change her testimony. We are not required to declare what our decision would have been had the prejudice in this case to defendant been confined to the opening statement. Our conclusion that defendant was so prejudiced as to be deprived of a fair and impartial trial and that the court nisi abused its discretion by not declaring a mistrial when moved to do so, is bottomed on the combination of elements and circumstance peculiar to this case and already explained. The present appeal presents another example of an unsatisfied prosecutor who comes by an acceptable case, yet unnecessarily tries to decorate it with statements and testimony which can only serve to excite passion and engender prejudice against the accused. It

matters not whether this occurs deliberately or for want of reasonable grounds for supposing he will be able to prove the facts stated or suggested by adduced testimony. The prejudicial result to defendant is the same.

We do not consider defendant's other points alleging error but suggest the state may well consider the defendant's brief filed here and govern itself accordingly to avoid the same averred mistakes upon re-trial. *State v. Aubuchon,* 381 S.W.2d 807, 816 (Mo.1964).

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

All concur.