

# Missouri Court of Appeals

## Southern District

### In Division

ANTOINE HARRIS-APPLEWHITE,  )
)
     Appellant,  )
) No. SD38254
 vs.  )
) FILED: April 30, 2025
STATE OF MISSOURI,  )
)
     Respondent.  )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David A. Dolan, Judge

## AFFIRMED

 Antoine Harris-Applewhite ("Movant") appeals the judgment of the motion court denying his Rule 29.15[1] post-conviction motion. In three points on appeal, Movant argues the motion court clearly erred in denying his claims that his trial counsel ("Trial Counsel") rendered ineffective assistance of counsel because Trial Counsel (1) failed to file and litigate a motion to sever Movant's unlawful possession of a firearm charge from the remaining charges, (2) failed to file a motion in limine and subsequently object at trial to the admission of witness testimony suggesting witnesses were threatened, and (3) failed to investigate the existence of other cameras at the scene of the alleged crimes, ask law enforcement at trial regarding their alleged failure to

---

[1] All rules references are to Missouri Court Rules (2020).

collect footage from these other cameras, and introduce evidence of the fact that other cameras existed at the scene of the alleged crimes. Finding no merit in Movant's points, we affirm the motion court's judgment.

## Factual Background and Procedural History

On December 19, 2015, law enforcement was dispatched to Westside Liquor ("the liquor store") following a 911 call indicating that a person had been shot and was lying in the road. Upon arriving at the scene, Detective Josh Golighlty found Samuel Sanders ("Victim") in the road with a gunshot wound to his chest. Victim died from his injuries. Investigation by law enforcement revealed that a pole camera operated by the city of Sikeston recorded video footage depicting Victim and Virgil Tate ("Tate"), his cousin, walking to the store. An interior camera located behind the counter with a view of a window also captured footage of both individuals walking to the store. The pole camera next captured footage of Victim and Movant fighting. The interior camera captured multiple individuals inside the liquor store watching the incident.

Movant was arrested and charged with first-degree murder under section 565.020 ("Count I"),[2] armed criminal action under section 571.015 ("Count II"), unlawful use of a weapon under section 571.030.1(4) ("Count III"), and unlawful possession of a firearm under section 571.070 ("Count IV").

### Trial Court Proceedings

The parties stipulated that Movant had been convicted of a felony on September 5, 2012. The stipulation, which did not include any further details regarding the felony, was admitted into evidence as State's Exhibit 3, and was published to the jury. No evidence concerning the prior felony conviction, other than the stipulation, was adduced at trial and the State only alluded to

---

[2] Unless otherwise noted, all statutory references are to RSMo 2000 as updated through RSMo Cum.Supp. 2014.

Movant's prior felony conviction in its closing argument regarding the evidence necessary to convict Movant under Count IV.

During the State's case-in-chief, Markesha Groce ("Groce"), Victim's wife, testified that three months before the incident, she and Victim went to Movant's uncle's place to "get her car worked on." When they arrived, there was a pillowcase on the porch containing seven pounds of marijuana. Groce testified that when no one answered the door, they took the marijuana and Victim later sold it. She testified that Movant threatened to "have something done" to her or her children if they did not return the marijuana. Groce also testified that a few days before the shooting she overheard Movant tell Victim "that he was going to make sure he had something done to him if he didn't give him his stuff back." As the prosecutor concluded her direct examination, she asked Groce, "have you received threats about coming to testify today?" Groce responded, without further elaboration, "Yes, I have."

Tate testified that on the date of the shooting, he walked to the liquor store with Victim. Tate then observed Movant begin to fight with Victim outside of the liquor store. As Movant began to chase Victim, Tate fled into the liquor store. Tate testified that he saw Movant reach into his pants but did not see what he removed from his pants. Tate testified he then heard gunfire but did not see who fired the shots.

The prosecutor impeached Tate with his deposition testimony, asking Tate whether he recalled telling law enforcement that he saw Movant reach into his waistband and pull out a silver pistol. The prosecutor asked Tate whether he had previously recanted his entire statement a couple of years ago. In response, Tate said, "I guess" and suggested that he was getting pressure from "[m]aybe someone that knew [Movant]" and was told "you know what to do." Tate testified that he did not consider what was said to him to be threats. Yet, confronted with

his deposition, Tate confirmed he previously stated he had been threatened by "[s]ome of [Defendant's] people."

Latravious Simmons ("Simmons") testified that he was "diagonal" from the liquor store when he saw Movant and Victim get "into an argument and a fight broke out." He testified that Movant shot Victim as he ran away from the fight. Simmons also testified that when he spoke with Detective Bobby Sullivan ("Detective Sullivan"), he told him that he was at home when the shooting happened "because previously to that there was another guy that had got killed over--" and then he was interrupted by Trial Counsel before he could finish.

The prosecutor asked Simmons, "When you come in and testify in court and talk about a fellow, a friend, is there fear of repercussions or retribution?" Simmons responded that he suspected there would be retaliation. When the prosecutor asked Simmons whether he indicated before that he was unwilling to testify because the "perception of retaliation" was "common among the community," Simmons answered in the affirmative and further stated that when he spoke with Detective Sullivan, Simmons asked about another individual's case and asked if it was related. Detective Sullivan asked why he was asking and Simmons testified he started to explain that he "just got word – You know what I'm saying? He was –" but Trial Counsel then objected without specifying a reason for the objection. Simmons then was asked if "there is fear about retaliation for testimony in this case" and answered in the affirmative. Later, when asked why he did not tell the same story to Detective Sullivan that he previously told to another detective, Simmons testified that before he talked to Detective Sullivan "there was another witness that was supposed to be --You know what I'm saying? Was going to be up here, but he is deceased now."

The jury found Movant guilty on all counts. The trial court sentenced Movant as a prior

4

and persistent offender to 30 years' imprisonment on Count I, 10 years on Count II, 7 years on Count III, and 10 years on Count IV, with Count I running consecutively to Count II, Count III running concurrently with Count IV but consecutively with Counts I and II, and Count IV running concurrently with Count III but consecutively with Counts I and II. Movant appealed and the trial court's judgment was affirmed.

Motion Court Proceedings

Movant timely filed his *pro se* and amended Rule 29.15 motions for post-conviction relief. In his amended motion, Movant argued that Trial Counsel provided ineffective assistance of counsel when he (1) failed to file and litigate a motion to sever Count IV from the remaining counts, (2) failed to file a motion in limine and object to testimony suggesting witnesses at trial were threatened or otherwise tampered with, and (3) failed to ask questions, introduce evidence, and argue that law enforcement failed to collect video footage from the other cameras at the liquor store.

At an evidentiary hearing on Movant's motion, Ryan Dennis ("Dennis") from the Sikeston Department of Public Safety testified that he viewed the inside camera behind the counter in the liquor store and elected to use the footage from the inside camera "because you could see through the window a little bit of the altercation." When asked if he knew whether there were any other cameras, Dennis testified that he viewed the outside cameras but they only "showed down the sidewalk in the front of the business" to where the incident occurred, so they used the outside pole camera to show the parking lot. When asked whether he was involved in the decision not to collect the outside camera footage, Dennis testified, "I wouldn't say I made the decision not to collect it, no. My opinion was it had no evidentiary value to it."

Marcus Smith ("Marcus"), the owner of the liquor store, testified that his surveillance

system at the store had eight cameras, which included two outside cameras, a camera facing the front door, a camera facing the cash register, and several other cameras. All cameras were motion-activated and Marcus testified that "one or two cameras maybe went out." He also testified law enforcement collected footage from his office in 2015, that he usually opens his office when requested by law enforcement, and the computer in his office usually has all the camera views displayed at once.

Trial Counsel testified, via deposition, that he only received footage from the interior liquor store camera 4, from the State and an investigator with the prosecutor's office told him the footage from that camera was the only footage law enforcement collected from the liquor store. Trial Counsel further stated that he believed he called the liquor store and was told that the footage from camera 4 was the only footage collected. He also visited the liquor store and the staff told him that law enforcement already collected the available footage. He stated that he did not remember looking for other cameras when he visited the liquor store. Trial Counsel testified that he "just assumed they had all the recorded footage" and he was "unaware of any other cameras that may have existed because they said they got all of it." When asked if he had found that there were other cameras, could he have used the camera footage from those cameras at trial, Trial Counsel responded that "I mean theoretically if it showed something beneficial." Trial Counsel did not recall speaking with law enforcement directly about the other cameras.

When asked whether he considered filing a motion to sever Count IV from the other counts, Trial Counsel answered, "I don't think that was really discussed," as he "somewhat anticipated" that Movant would testify and the fact that he was a convicted felon "would have come out" anyway. Trial Counsel admitted that he did not "recall a reason why we would want

6

[the jury] to know that [Movant] was a convicted felon" and not filing a motion to sever Count IV from the other counts "was not part of any strategy or anything like that."

Trial Counsel was asked about Simmons being concerned that another individual was killed for being a witness in this case. Trial counsel recalled that the police report prepared by Detective Sullivan stated that Sullivan did not believe that was why the other individual was killed. Trial Counsel was then asked if he had considered filing a motion in limine to try to keep Simmons from referring to a deceased witness, he replied "[n]o I guess I didn't because I didn't file one." Trial Counsel recalled that Tate, in his prior deposition, testified to being threatened, but that Trial Counsel did not consider filing a motion in limine to prevent that information from being admitted at trial and that he would not want the jury to hear that information. He testified that he further did not consider filing a motion in limine to keep Groce from suggesting she had been threatened because he did not anticipate that "there was going to be as much talk about people threatening." Trial Counsel believed that there was no "substantive evidence of any threats."

The motion court entered findings of fact and conclusions of law denying Movant's claims. The motion court concluded that Movant did not suffer substantial prejudice from the stipulation concerning Movant's prior felony conviction, as the State "produced substantial evidence to support each count" and severing Count IV from the other counts "would not have produced a different result." The motion court also concluded that Movant was not unfairly prejudiced by testimony from witnesses that they had been threatened because Movant did not demonstrate unfair prejudice and the "testimony was of probative value in the case." Finally, the motion court concluded that Movant did not demonstrate that Trial Counsel's alleged failure to

7

investigate the existence of other cameras, the absence of the video footage from the other cameras, and Trial Counsel's alleged failure to question the State's witnesses regarding the absence of footage from the other cameras was prejudicial. Movant now appeals.

**Standard of Review**

Under Rule 29.15(k), "Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." "Appellate courts presume the motion court's findings are correct and a judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Newman v. State*, 702 S.W.3d 202, 206 (Mo.App. 2024) (internal quotation marks omitted). As stated recently by the Supreme Court of Missouri,

> this includes *de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and – in the rarest of cases – rejection of factual findings for which there may be substantial evidence but regarding which the reviewing court, nevertheless, on the entire record, is left with a definite and firm conviction (or impression) that a mistake has been made.

*Flaherty v. State*, 694 S.W.3d 413, 419 (Mo. banc 2024). "This Court defers to the motion court's superior opportunity to judge the credibility of witnesses." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation marks omitted).

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). "Under *Strickland*, a movant must demonstrate that: (1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." *Johnson v. State*, 406 S.W.3d 892, 898-99 (Mo. banc 2013). "Both

8

of these prongs must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel." ***McFadden v. State***, 553 S.W.3d 289, 298 (Mo. banc 2018) (internal quotation marks omitted).

"To establish relief under *Strickland*, a movant must prove prejudice. Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Johnson***, 406 S.W.3d at 899 (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Hosier v. State***, 593 S.W.3d 75, 81 (Mo. banc 2019) (internal quotation marks omitted). "If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, a court should follow that course." ***Michael v. State***, 348 S.W.3d 164, 167 (Mo.App. 2011).

### Discussion

Point One

In his first point, Movant argues the motion court clearly erred in denying his claim that Trial Counsel rendered ineffective assistance of counsel because Trial Counsel failed to file and litigate a motion to sever Count IV from the remaining charges. Movant argues that because the stipulation that he was a prior felony offender only proved a fact necessary to support his conviction for Count IV, not the remaining charges, Trial Counsel's failure to file a motion to sever Count IV prejudiced him with regard to the remaining charges. If Trial Counsel had filed the motion, Movant argues that there would have been a reasonable probability that the outcome of the trial would have been different. We disagree.

Within the context of ineffective assistance of counsel claims concerning evidence of prior bad acts or prior felony convictions, the prejudice determination often depends on other

9

evidence of guilt adduced at trial. Courts may consider the extent and nature of the evidence presented at trial to determine whether the jury's verdict was based on any perceived propensity of a defendant to violate the law rather than on actual evidence of the crimes charged. *See Hosier*, 593 S.W.3d at 84. Further, when similar prior bad acts are adduced at trial and are relevant to the crimes charged, depending on the unique facts and circumstances of each case, additional evidence of prior bad acts or prior felony convictions does not evince a reasonable probability that the outcome of the trial would be different. *See Worthington v. State*, 166 S.W.3d 566, 582 (Mo. banc 2005); *Zych v. State*, 81 S.W.3d 96, 100 (Mo.App. 2002).

At trial, Tate testified that on the day of the incident he saw Movant outside the front door of the liquor store and Movant began to fight with Victim. The pole camera footage also corroborated Tate's testimony that Victim and Movant fought. Tate further testified that he saw Movant begin to chase Victim and saw Movant reach into his pants. He then heard gunfire but did not see who fired the shots. Simmons testified that he was walking towards the store when he saw Movant and Victim get "into an argument and a fight broke out." He testified that Victim ran away from the fight and Movant shot him as he was running. The interior camera captured footage of multiple people inside the liquor store watching the incident. Law enforcement was dispatched to the liquor store following a 911 call indicating that a person had been shot and was lying in the road outside the liquor store. Detective Golighlty found Victim in the road with a gunshot wound in his chest. The jury also heard evidence through Groce that Movant was a dealer of marijuana. Given all the evidence of Movant's guilt introduced at trial, there is no reasonable probability that had the jury not received evidence of Movant's prior felony conviction, they would have acquitted Movant.

Movant relies on **State v. Cook,** 673 S.W.3d 469, 471 (Mo.App. 1984) for the proposition that evidence of a prior felony conviction, when inadmissible as to the other offenses jointly charged, must constitute substantial prejudice and uniformly warrants a mistrial or reversal of his other convictions. In **Cook**, the defendant ("Defendant") was charged with unlawful possession of a firearm based on his felony status and three other offenses. **Id.** at 471. The prosecutor read a certified copy of Defendant's prior conviction to the jury over objection by Defendant's trial counsel. **Id.** at 472. On direct appeal, the Court noted that "[t]he prejudicial effect of permitting a jury to discover that a defendant has been guilty of other crimes is manifest" and "[a]ny reference to a defendant's involvement in unrelated crimes, except for the purpose of direct impeachment of [Defendant], has been characterized as having a dangerous tendency and misleading probative force." **Id**. (internal quotation marks omitted). The Court held that, with regard to the other three felonies charged, Defendant was prejudiced and reversed his convictions.

Movant's reliance on **Cook** is misplaced. On direct appeal, the **Cook** court considered whether Defendant was prejudiced by the trial court's failure to sever his unlawful possession of a firearm count from the other counts based on his prior felony conviction. On appeal from Movant's post-conviction motion, we consider whether the motion court clearly erred in determining that Trial Counsel's alleged failure to file a motion to sever Count IV from the other counts evinced a reasonable probability that, had Trial Counsel filed the motion, the outcome of the trial would have been different. "The standard for finding prejudice in the context of preserved error is lower than the standard for finding error under *Strickland*. . . ." **Deck v. State**, 68 S.W.3d 418, 427 n.5 (Mo. banc 2002). Within the context of ineffective assistance of counsel claims, the relevant inquiry is whether, based on the evidence adduced at trial and the unique

11

facts and circumstances surrounding the convictions, there is a reasonable probability that the outcome of the trial would have been different.

Further, both parties stipulated to Movant's prior conviction and Movant's certified copy of his conviction was not read in open court or admitted into evidence. The jury did not hear or see any evidence regarding the name or nature of Movant's prior conviction. Based on the evidence adduced at trial and the fact that the jury only received evidence of Movant's prior conviction through a stipulation, we are unconvinced the trial record supports a reasonable probability that the jury would not have found Movant guilty of Count I, Count II, and Count III if the trial court severed Count IV from the other three offenses. *See* **Hosier**, 593 S.W.3d at 84.[3]

Therefore, the motion court's judgment indicating that severing Count IV from the other counts "would not have produced a different result" was not clearly erroneous.

Point one is denied.

### Point Two

In his second point, Movant argues that Trial Counsel was ineffective because he failed to file a motion in limine and subsequently object at trial to the admission of testimony by Groce, Tate, and Simmons suggesting witness tampering. We disagree.

"If it be shown that an accused directly, or indirectly through a third party . . . by any means threatens or persuades a witness to give false testimony, such showing is properly receivable as evidence to establish the accused's guilt on the original charge and to show consciousness of guilt." **State v. Hicks**, 535 S.W.2d 308, 311 (Mo.App. 1976). "However, it is

---

[3] In **Hosier**, our Supreme Court noted, in response to the appellant's argument that trial counsel's failure to stipulate to a prior conviction prejudiced him and constituted ineffective assistance of counsel, that based on the "wide range of inculpatory evidence," even if trial counsel stipulated to the appellant's prior conviction, there was no reasonable probability that the jury's verdict would have been different if they heard that the defendant had been "convicted previously of an unspecified and unexplained felony." **Hosier**, 593 S.W.3d at 84.

extremely elementary that one person is not answerable, civilly or criminally, for the misconduct of another sans a showing of the existence of some relationship or connection between the two which would render the former liable or responsible for the actions of the latter." *Id.* at 312. Therefore, "if a person other than the accused threatens a witness to induce false testimony, then statements, questions and testimony concerning such threats are clearly improper and inadmissible if it cannot be shown that the threats were made at the request of the accused or with his consent and knowledge." *Id.*

Here, Groce testified that Defendant had made threats against herself and Victim immediately prior to the events giving rise to the criminal charges at issue in the prior proceedings. Specifically, Defendant threatened to "have something done" to Groce or her kids if they did not return the marijuana and testified that, a few days before the shooting, she overheard Movant threaten Victim in a similar manner during a phone call. Following this testimony, Groce was asked if she had received threats about testifying, she replied that she had, but was not asked a follow up question to identify the source of those threats. Defendant's involvement in such threats is reasonably inferable, however, based upon the immediately preceding direct evidence of him having made previous threats.

Furthermore, the subject testimony of Tate and Simmons was admissible on a basis wholly independent from a consciousness-of-guilt showing. That testimony occurred *after* the prosecutor impeached Tate and after Simmons admitted he told law enforcement that he was at home on the day of the incident. "[A] witness [has] a right to explain . . . that the reason for [his or] her inconsistent statements was fear generated by threats." *State v. May*, 587 S.W.2d 331, 336 (Mo.App. 1979). "The fact that [a] defendant could not be linked to the threats, [does] not eradicate fear as the motive for the witness' inconsistent statements." *Id.*

For the foregoing reasons, the motion court did not clearly err in finding that the subject testimony had probative value. Moreover, considering also the evidence introduced at trial of the crimes charged—including the camera footage showing Movant and Victim fighting shortly before Victim was found dead in the same area—there is no reasonable probability that excluding this witness testimony would have changed the outcome of the trial. The motion court did not clearly err in further finding that Movant was not prejudiced by the brief witness testimony at issue here.

Point two is denied.

Point Three

In his third point, Movant argues Trial Counsel failed to investigate the existence of other cameras at the liquor store and introduce evidence of the fact that law enforcement did not collect footage from these other cameras at the liquor store. He argues that, had Trial Counsel investigated and found the other cameras located at the liquor store, he could have realized law enforcement did not collect footage from the other cameras and introduced evidence of this fact or asked law enforcement on the stand why they did not collect footage from the other cameras. Movant insists that, had Trial Counsel investigated and introduced this evidence at trial, he could have undermined the efficacy of law enforcement's investigation and Trial Counsel's failure to do so indicates there was a reasonable probability that the outcome of the trial would have been different.[4] Again, we disagree.

---

[4] The State argues Movant's point is multifarious and therefore deficient under Rule 84.04(d). The State argues that each of Movant's arguments under this point constitutes an independent basis for relief and should not be combined in one point and it is unclear on which of these arguments Movant principally relies. However, even if Movant's brief was deficient under Rule 84.04(d), Movant's argument is "readily understandable," so we "prefer to decide [Movant's case] on the merits" and do not dismiss Movant's Point III based on Rule 84.04(d). *See* ***State v. Blacksure***, 690 S.W.3d 629, 634 (Mo.App. 2024) (internal quotation marks omitted).

Nothing in the evidence adduced in the post-conviction proceeding suggests that footage from the other cameras would have produced any exculpatory evidence, and Movant does not suggest otherwise. At the evidentiary hearing, Dennis testified he viewed the other cameras but they only "showed down the sidewalk in the front of the business" to where the incident occurred, so law enforcement used the outside pole camera to show the parking lot. Dennis testified that though he did not decide to refrain from using the footage collected by the other cameras, they did not have any "evidentiary value." In his deposition, Trial Counsel testified he only received footage from the interior liquor store camera 4 from the State and an investigator with the prosecutor's office told him was the only footage law enforcement collected from the liquor store. When asked if he had found that there were other cameras, could he have used the camera footage from those cameras at trial, Trial Counsel answered "I mean theoretically if it showed something beneficial."

Movant argues, in effect, that Trial Counsel should have suggested that there was or could have been exculpatory evidence in the footage recorded by the other cameras. But without any indication that the other cameras recorded exculpatory evidence, any answers Trial Counsel would or could have elicited from law enforcement are purely speculative. "Mere conclusory speculations of prejudice by [m]ovant are not considered substantive evidence of counsel's ineffectiveness." *Coleman v. State*, 640 S.W.3d 159, 167 (Mo.App. 2022) (internal quotation marks omitted).

Accordingly, the motion court's decision that Movant was not prejudiced by Trial Counsel's alleged failure to investigate, introduce evidence of the other cameras, and ask law enforcement at trial about their alleged failure to collect footage from the other cameras was not clearly erroneous.

15

Point three is denied.

## Decision

The motion court's judgment is affirmed.

BECKY J. WEST – OPINION AUTHOR

JEFFREY W. BATES – CONCURS

MATTHEW P. HAMNER – CONCURS