STATE of Missouri, Respondent,

v.

Eugene MINOR, Appellant.

No. 59840.

Supreme Court of Missouri,
en banc.

Sept. 27, 1977.

Rehearing Denied Oct. 11, 1977.

Lee M. Nation, Kansas City, for appellant.

Nanette R. Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Charged by indictment with robbery first degree with a deadly and dangerous weapon and felony-murder: robbery, defendant was convicted on each count and sentenced under the Second Offender Act to consecutive terms of fifty years and life imprisonment, respectively. Defendant appealed to the Missouri Court of Appeals, Kansas City district, and raised questions of constitutional construction falling within the exclusive appellate jurisdiction of the Supreme Court under Mo.Const. Art. V, § 3, as amended in 1976. The cause was transferred here prior to opinion.

Seven assignments of error are presented: (1) Failure to quash the jury panel because Missouri's jury selection process systematically excludes women; (2) Erroneous joinder and refusal to sever the two felony charges; (3) Wrongful refusal to grant mistrial following improper prosecutorial statement; (4) Improper sentencing under the Second Offender Act when the trial court failed to make findings sufficient to invoke its application; (5) Failure to give defendant's requested verdict directing instruction to the effect that defendant had withdrawn from the robbery before the murder and hence was not guilty of felony murder; (6) Failure to give instruction MAI–CR 1.08 before each recess; (7) Failure to give instruction MAI–CR 2.70, admonishing the jury to consider the law and evidence as to each count separately.

Sufficiency of the evidence not being raised, a brief statement will suffice at this point, though additional facts pertinent to individual points will be supplied when necessary. On January 2, 1975, defendant entered Traxler's Pharmacy in Kansas City with an accomplice; brandishing a revolver, he ordered the store owner and a customer to get down and began to rake drugs into a pillow case. During the robbery another accomplice entered, warning that the police had arrived. The robbers ran into the back room where the rear door was located but it was firmly locked. Two officers of the Kansas City Police Department had come to the scene and one covered the back door

from outside, the other officer, Mestdagh, entered the store. Mestdagh went through the store to the back room where scuffling was heard followed by the sound of three shots. Almost immediately defendant and another of the robbers emerged from the room and were apprehended near the store as they attempted to flee. Mestdagh's body, riddled by three bullets, was found in the back room.

I

■ Defendant first contends the trial court erred in failing to quash the panel because Missouri's jury selection process, Mo.Const. Art. I, § 22(b) and § 494.031(2), RSMo Supp. 1975, systematically excludes women from jury service and is therefore unconstitutional, citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *State v. Duren*, No. 59914, 556 S.W.2d 11 (Mo.banc 1977), decided concurrently with the case at bar, upheld the challenged constitutional section and its implementing statute which permit women the privilege of declining jury service and that decision is dispositive of this defendant's sex based challenge to the facial validity of the cited sections.

■ The remaining question is whether from the evidence it has been shown that the Jackson County jury selection process resulted in criminal venires not "representative of the community" and "almost totally male", as those constitutional standards were delineated in *Taylor*, requiring reversal in this case. By stipulation the evidence presented in the proceeding to quash the jury panel in *State v. Lee*, 556 S.W.2d 25 (Mo.banc 1977), another case decided concurrently herewith, was introduced in the case at bar. Defendant also introduced the list of jurors summoned during the week of trial (December 8, 1975), however, this exhibit was not filed with this court nor included in the transcript on appeal. The panel of 55 in defendant's case had 6 women (10.9%) and the final 12 were men. The evidence does not differ significantly from *Lee*, hence the contention is denied.

## II

■ It is next contended the court erred permitting joinder of charges in a single indictment and compounded the error by denying severance, forcing defense of both in a single trial. The murder of Mestdagh and the drugstore robbery were simultaneous or sequential parts of a single escapade occurring at the same location, constituting different criminal offenses. The state has not attempted to present unconnected crimes in the same trial and joinder of the charges was permissible under Rule 24.04 as amended in 1971.[1] See *State v. Baker*, 524 S.W.2d 122 (Mo.banc 1975).

In *State v. Duren, supra*, this court considered a constitutional challenge to Rule 24.04, essentially the same as that made by this defendant. That ruling controls here and as in *Duren*, defendant has neither suggested nor has our examination of the record disclosed abuse of discretion in denial of the requested severance. This allegation of error is denied.

## III

Defendant complains the trial court erred denying defendant's request for mistrial, prompted by the prosecutor's opening statement that defendant's companion, John Francis, admitted complicity in the robbery. The court overruled the motion but warned the prosecutor, out of the jury's hearing, " . . . don't make any more statements like that." The objectionable statement was as follows: "The evidence will further be that at police headquarters that night, detectives in the Crimes Against Persons Unit interviewed John Francis and they identified this defendant, Eugene Minor; that they were told several stories, but ultimately after this defendant was permitted to talk to John Francis in private, both John Francis and this defendant, Eugene

Minor, admitted their complicity in this robbery. Each of them denied being the one to shoot Russell Mestdagh, but each admitted their participation in this robbery."

■ It first should be noted the state may not show that a non-testifying co-indictee has been convicted or pled guilty to the same crime as that which the defendant stands charged, *State v. Fenton*, 499 S.W.2d 813 (Mo.App.1973), nor may the state introduce evidence implicating only the co-indictee, *State v. Mullen*, 528 S.W.2d 517 (Mo. App.1975). See also *State v. Castino*, 264 S.W.2d 372 (Mo.1954). Further, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) condemned the prosecutor's introduction of an accomplice's confession by a third party implicating the defendant because defendant was denied the opportunity of cross-examining the accomplice and confrontation of his accusers.

■ Here, no attempt was made to introduce evidence of Francis' confession, instead the prosecutor's statement referred only to admission of complicity in the robbery and the fact that Francis denied having shot Officer Mestdagh. The prosecutor claimed the investigating detectives and Francis "identified this defendant, Eugene Minor; that they were told several stories but ultimately after this defendant was permitted to talk to John Francis in private, both John Francis and this defendant, Eugene Minor, admitted *their* complicity in the robbery." (Emphasis ours.) Use of the third person plural possessive 'their' indicates that Francis and Minor both admitted the others' as well as his own complicity. However, in the next sentence the prosecutor stated, "*each* of them denied being the one to shoot Russell Mestdagh, but *each* admitted *their* participation in this robbery."[2] (Emphasis ours.) From this ambi-

1. Rule 24.04, effective July 1, 1971, provides in part: "All offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count when authorized by statute."

2. In such cases when "their" is used colloquially with the singular antecedent "each", the use of the pronoun "their" is intended as the third person singular possessive "his". See Webster's New World Dictionary, Second College Edition 1974, p. 1474.

guity it can reasonably be argued the prosecutor, by the colloquial usage, intended to state that each admitted *his* participation but not that of the other. Regardless of the interpretation of the prosecutor's remarks, i. e., whether Francis implicated only himself or Minor as well, the statement was objectionable. Nevertheless we do not believe it was prejudicial, requiring mistrial. The remedy of mistrial is a drastic one, *State v. Johnson*, 504 S.W.2d 23 (Mo.1973) and is to be exercised only in those circumstances where the alleged prejudice can be removed in no other way. *State v. Goff*, 490 S.W.2d 88 (Mo.1973); *State v. Pruitt*, 479 S.W.2d 785 (Mo.1972); *State v. Blockton*, 526 S.W.2d 915 (Mo.App. 1975). As stated in *State v. Camper*, 391 S.W.2d 926, 928 (Mo.1965):

> " . . . the declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who has observed the incident giving rise to the request for a mistrial, and who is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial."

Though defendant's motion for mistrial was overruled, his objection to the statement was in effect sustained by the trial court's warning to the prosecuting attorney against further "statements like that". The defense made no request that the court instruct the jury to disregard the prosecutor's statement or for similar remedial action. Moreover defendant's guilt was established by abundant evidence. There is no question of identity, indeed defendant did not deny his presence at the scene but claimed only that he did not participate in the robbery; that he was merely a disinterested bystander. He explained his running from the drugstore as an effort to escape being hit by stray gunfire. Two witnesses (the owner and a customer) with ample opportunity for observation inside the drugstore, positively identified defendant at a lineup and in court as one of the non-masked robbers. Each saw defendant with a gun and the owner, who was ordered to open the cash register, saw defendant stuff a pillowcase with drugs and while in the front room, fire his pistol. Both witnesses saw defendant and one companion flee to the rear of the store when the police arrived and shortly after Officer Mestdagh pursued the robbers into the back room, they heard scuffling followed by gunfire. Immediately after the gunshots, one witness saw defendant leave the back room and another (who had taken cover) heard footsteps of someone leaving the store. Officer Gaugh, seeing defendant as he emerged from the store with a handgun, gave chase and was able to catch and arrest him. Five other witnesses identified defendant as the man running from the store and chased by Officer Gaugh.

After defendant was taken to police headquarters and informed of his *Miranda* rights, he admitted participation in the crime in the presence of two detectives and two employees of the prosecuting attorney's office, but later refused to sign a typewritten statement containing his confession.

Our function is to determine, whether as a matter of law, the trial court abused its discretion to the prejudice of defendant in refusing to grant a mistrial. The prosecutor's somewhat ambiguous comment was not followed by further objectionable reference in opening statement, during testimony or in closing argument. The trial judge observed the incident and has the better position to assess its effect and determine measures necessary to cure it. In this case where the evidence of guilt is strong we cannot find prejudice spawned by the prosecutor's improper opening remarks warranting reversal. See *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *State v. DeGraffenreid*, 477 S.W.2d 57, 65 [15] (Mo.banc 1972). The point is denied.

### IV

Tried under the Second Offender Act (§ 556.280, RSMo 1969), defendant contends the trial court's findings were inadequate to invoke the court's sentencing authority. The court found appellant had a

previous felony conviction for which he served time in the custody of the Missouri Division of Corrections and that § 556.280, RSMo 1969, was applicable. In *State v. Blackwell*, 459 S.W.2d 268 (Mo.banc 1970) such findings were approved as sufficient under the Act. See also *State v. Bolden* , 525 S.W.2d 625 (Mo.App.1975); *State v. Abernathy*, 515 S.W.2d 812 (Mo.App.1974); *State v. Shumate*, 516 S.W.2d 297 (Mo.App. 1974). The point is without merit.

## V

The trial court refused a proffered instruction concerning defendant's alleged withdrawal from the robbery before the murder of Officer Mestdagh. The proposed instruction was as follows:

"If you find and believe from the evidence that on January 2, 1975, Eugene Minor withdrew from his participation in the robbery of Traxler's Drugstore and that after his withdrawal from the robbery of Traxler's Drugstore Officer Mestdagh was killed by another party acting without the aid or encouragement of Mr. Minor, you must find Mr. Minor not guilty of felony murder."

The only evidence (buttressed by all favorable inferences) supporting defendant's contentions may be summarized as follows: When defendant saw Officer Mestdagh coming into the store, he ran into the back room to escape, but was unable to do so. The officer entered the back room to and drew his revolver from its holster. Defendant then crawled from the back room to the front door and ran outside. Witnesses then heard several shots fired in the rear room of the store where Mestdagh's body was found.

A remarkably similar fact situation is found in *State v. Johnson*, 524 S.W.2d 97 (Mo.banc 1975), reversed on other grounds. There two robbers entered a store, the co-indictee bound the owner in a back room, while defendant rifled the cash register and looted the store. When finished, defendant said, "Come on, let's go, I have got the stuff," and the owner heard him leave. The co-indictee remained to take the contents of the safe, but was interrupted by two police officers, one of whom he killed in the ensuing shootout. This court approved a felony-murder instruction given in the defendant's trial, noting that "the killing occurred 'in flight from the scene of the crime to prevent detection or promote escape' ".

It has uniformly been held in Missouri, as in *Johnson*, that escape from a robbery or robbery attempt is part of the crime, *State v. Glenn*, 429 S.W.2d 225 (Mo. banc 1968); *State v. Engberg*, 376 S.W.2d 150 (Mo.1964); *State v. Jasper*, 486 S.W.2d 268 (Mo.banc 1972); *State v. Adams*, 98 S.W.2d 632 (Mo.1936), and "If two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other (or others) commits that particular crime, but *he is also guilty of any other crime committed by the other* in pursuance of the common purpose, or *as a natural or probable consequence thereof.*" *State v. Chernick*, 278 S.W.2d 741, 746 [2] (Mo.1955) (Emphasis added). See also *State v. Paxton*, 453 S.W.2d 923 (Mo.1970); *State v. Williams*, 548 S.W.2d 227 (Mo.App.1977); *State v. Sneed*, 549 S.W.2d 105 (Mo.App. 1977). The murder resulting from the attempted escape was a natural and probable consequence of the original crime especially when firearms were employed in the underlying felony. It matters not whether defendant or his accomplice shot the police officer, under the interpretation of the evidence most favorable to defendant, the proffered instruction was properly refused.

## VI

Defendant complains the court erroneously failed to give MAI–CR 1.08 before each trial recess as required by Rule 20.02(a).[3] Rule 20.02(e) provides that fail-

---

**3.** The first three sentences of Rule 20.02(a), with numbers and emphasis added, require:

[1] "*Prior to voir dire examination* of the jury the court must read to the jury MAI–CR 1.02."

ure to give a required instruction "shall constitute error, its prejudicial effect to be judicially determined." Since the rule's adoption it has been held that giving instructions containing the substance though not the form of MAI–CR 1.08 is non-prejudicial, absent a showing of jury misconduct. *State v. Gaye,* 532 S.W.2d 783 (Mo.App. 1975); *State v. Abbott,* 547 S.W.2d 853 (Mo. App.1977). See also *State v. Brown,* 502 S.W.2d 295 (Mo.1973), and *State v. Vernor,* 522 S.W.2d 312 (Mo.App.1975).

In *Abbott, supra,* the trial court failed in one instance to give MAI–CR 1.08(b) before a trial recess. In response to an allegation of error it was held no prejudice occurred because: (1) the jury had, prior to the omission, been admonished as required by MAI–CR 1.08(a) & (b) , (2) the jury was instructed at all subsequent recesses and (3) counsel for defendant did not object to the omission or seek remedial action. The court of appeals noted the deference due the trial court's action in overruling defendant's motion for new trial because of its vantage point for observing the jury's conduct. Here the effect of the court's failure to give the instruction at the noon recess before the petit jury was sworn was ameliorated by the following: (1) the panel had a short time earlier received the court's admonition of somewhat similar character through MAI–CR 1.02,[4] (2) at the first recess following the noon recess the court gave a slightly modified form of MAI–CR 1.08(a), (3) at the first recess after the jury was sworn the court gave MAI–CR 1.108(a) verbatim, (4) at the seven subsequent recesses the court

instructed the jury on substantially the same subject matter as MAI–CR 1.08(b) and in some instances went beyond the requirements of 1.08(b). There was substantial compliance with the Rule and defendant failed to object to the omission or variance in the instructions given from MAI–CR 1.08. The state has shown by the record no prejudice occurred and we find the error harmless.

### VII

Finally defendant claims the court's failure to give instruction MAI–CR 2.70 in this two count indictment case constituted reversible error. The notes on use to MAI–CR 2.70 declare that when multiple counts are submitted, the instruction's purpose is to apprise the jury that evidence as to each count is to be considered separately. See *State v. Johnson,* 537 S.W.2d 816 (Mo. App.1976). The robbery and the murder were parts of the same transaction and the testimony concerning each offense related to the other. All evidence concerning the robbery was essential to the felony-murder charge and most relating to the murder was relevant to the robbery, as the murder occurred during the attempted escape phase. It is difficult to see how the jury could have been misled by considering testimony as to either crime. To assist the jury separate verdict directors were submitted for the robbery and for the murder, each carrying the proviso directing acquittal if the jury did not believe every submitted element.

[2] *"after the jury has been sworn* but before the opening statements, the court must read to the jury MAI–CR Nos. 1.06, 2.01 and 2.02."

[3] *"before each recess or adjournment* of the court the court must read to the jury *MAI–CR 1.08."*

The chronology of items as set forth in the cited portion of the Rule would suggest that MAI–CR 1.08 need not be given except at recesses declared after the jury is sworn and after opening statements. Such an interpretation would cure the omission here. However, we interpret the Rule to require giving 1.08 before each recess or adjournment of the court after the jury panel is sworn for voir dire examination.

4. At the commencement of voir dire, the court read MAI–CR 1.02 advising the array that the 12 selected for jury duty "will be instructed later that you are not to discuss this case with anyone or among yourselves until the case is concluded and you are sent to the jury room with written instructions of the law and to deliberate upon your verdict." The instruction contained the further admonition that attorneys for the state and the defendant, as officers of the court, will avoid saying anything to the jury other than formal salutations and "the same applies to witnesses and to the defendant. They have been or will be instructed to avoid all contacts with the jury even to talk about matters wholly unrelated to the case."

The issues were further pinpointed by four appropriate verdict forms referencing the counts and crimes. These factors weigh heavily against a finding of prejudice stemming from the omission of MAI–CR 2.70. *State v. Johnson, supra; State v. Nelson,* 532 S.W.2d 855 (Mo.App.1975). In addition, an incident occurred demonstrating that the jury considered the law and evidence as to each count separately. During its deliberations the jury sent a note to the court asking "If a person participates in an armed robbery and a murder results in an escape attempt—is that person guilty of murder even though there is no evidence he did do the shooting? The instructions are not clear on this point. Roy L. Dickerson, Foreman."[5] Manifest in this inquiry is the jury's sharp attention to the separate elements of each crime and an awareness that evidence concerning the shooting, which followed the central acts of the robbery, was not accompanied by direct evidence of who fired the shots. It is apparent the jurors understood the evidence and rationally considered each crime, but had questions concerning the law of felony-murder which they later resolved by their separate verdicts. See *State v. Boyington,* 544 S.W.2d 300 (Mo.App.1976). The purpose of MAI–CR 2.70 to assure that the jury, in reaching its verdict, applies the law and evidence to each charge independently, was fulfilled. The state has shown by the record and reasonable inferences therefrom that no prejudice occurred and we find the error harmless. However, this result in this case does not indicate necessarily the same result in other cases wherein MAI–CR 2.70 is not given. The directions in MAI–CR provide that it is to be given in all cases wherein there are multiple counts and trial judges are admonished to follow that direction.

The judgment of the trial court is affirmed.

MORGAN, C. J., and HENLEY and FINCH, JJ., concur.

DONNELLY, J., concurs in result.

BARDGETT, J., dissents for reasons stated in the dissenting portion of his opinion concurring in part and dissenting in part in *State v. Duren,* No. 59914, 556 S.W.2d 11.

SEILER, J., dissents for reasons stated in his dissenting opinion in *State v. Duren,* No. 59914, 556 S.W.2d 11.

---

5. The court replied in writing: "To the jury: Read all the written instructions. Judge Hall."