STATE of Missouri,
Plaintiff-Respondent,

v.

Leland BROWNER, Defendant-Appellant.

No. 38331.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 25, 1979.

Roy A. Walther, III, Crouppen, Walther, Zwibelman & Walsh, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Appellant Leland Browner was found guilty by a jury in the Circuit Court of the City of St. Louis of two Counts of Assault with Intent to Kill[1] on the 1st day of July, 1976. After his motion for new trial was

---

1. Appellant was charged in the Indictment with three Counts of Assault with intent to kill; however, at the close of defendant's case the state dismissed Count II of the Indictment. Appellant also was charged with having been previously convicted of a felony, Carrying a Concealed Weapon, and after a finding on this issue the assessment of punishment was not submitted to the jury.

overruled, he was sentenced on July 9, 1976, to the custody of the Missouri Department of Corrections for two terms of seventy-five years, to be served consecutively. He filed a timely notice of appeal raising four Points Relied On as grounds for the reversal of his conviction. We affirm.

The sufficiency of the evidence to support the jury verdict is not raised; therefore a short statement of the facts will suffice.

According to the evidence appellant, Ladel Walton and Eddie Turner drove to the New Age Savings & Loan Ass'n. at 1401 North Kingshighway in the City of St. Louis on July 18, 1975, and upon arriving there discussed their plan to rob the bank. They entered the bank and appellant, armed with a handgun, approached a security guard, and the security guard struggled with him in an effort to disarm him. During the scuffle appellant shot the security guard; the security guard fell behind a counter and the appellant leaned over the counter and shot the security guard two more times.

After this, the appellant moved to another part of the bank and as he did so Mr. Anderson, the Collection Manager of the bank, went to the aid of the security guard. Appellant returned to where Mr. Anderson was with the security guard and when Mr. Anderson observed him approaching Mr. Anderson held up his arms. Appellant shot Mr. Anderson twice.

Both the security guard and Mr. Anderson identified the appellant at trial as the man who shot them.

Appellant's First Point Relied On is that the trial court erred when it denied his motion for a mistrial filed during the voir dire examination of the jury because one of the veniremen stated that she had made a wrong decision concerning the innocence of a defendant in a prior criminal trial, and this statement was prejudicial to the appellant.

Where the question on appeal is whether a remark made by a juror during voir dire examination of a jury panel is so prejudicial as to require a mistrial, the real issue to be resolved is whether the juror's remarks were in fact so prejudicial as to infect the entire panel to the prejudice of the accused. *State v. Turner,* 462 S.W.2d 723, 725[1] (Mo.1971). The general rule is that the disqualification of an individual juror for expressing an opinion or making remarks indicating a bias or prejudice which might preclude the juror from serving as a juror in a case is not a sufficient ground for a challenge of the entire jury panel. *State v. Weidlich,* 269 S.W.2d 69, 71[3–5] (Mo.1954). To hold otherwise would be to chill the procedure of attempting to extricate from prospective jurors those hidden prejudices which might deprive either the state or the accused of a fair trial. The evaluation of any effect a juror's answer might have upon fellow jurors during the voir dire proceedings and what action must be taken to assure both sides to the fair trial our system attempts to guarantee must, of necessity, be largely entrusted to the discretion of the trial court. *State v. Murphy,* 533 S.W.2d 716, 717–718[1–2] (Mo. App.1976).

We note that the juror who gave this response was removed for cause from the jury panel.

In this particular instance the Assistant Circuit Attorney inquired if there was anyone who felt that by reason of any prior jury experience they couldn't be fair and impartial to both parties in the case. Juror No. 1 replied that she would be a bit prejudiced "because we made the wrong decision, which they tell us afterwards." Without any further inquiry into the matter, this juror continued: "I was sick for weeks afterward because I thought I was being a fair person and I voted: Free him. There's no proof. We don't want to put an innocent man in jail. And afterwards, they were all mad at me about it. The others knew he was guilty. And I felt we were being made fools of by not giving us all the information."

At this point, the counsel for appellant approached the Bench and, out of the hearing of the jury requested a mistrial, and that the entire panel be stricken because of

the juror's statement; that he was not requesting any other relief. The motion to quash the jury panel and grant the mistrial was denied.

With the record in this condition we cannot say that the trial court abused its discretion in denying appellant's motions. Only a portion of the voir dire examination is incorporated into the transcript on appeal and we are unable to ascertain from that portion whether other jurors were affected by this juror's statements or even if they were asked if they heard these remarks and what effect, if any, it would have on their ability to serve. Many circumstances occur during voir dire examination which at first blush might appear to be prejudicial. However, we believe that where, as here, trial counsel contends the entire panel of jurors has been tainted he has the burden of furnishing a reviewing court evidence that in the light of the statement made by the juror, his client's rights have been prejudiced, and in the absence of any such evidence, on appeal we must recognize the fact that the trial court is in a better position to observe what effect, if any, the juror's alleged prejudicial statement had on his or her fellow jurors.

We rule this Point against appellant.

Appellant's Second Point Relied On is that the trial court erred in overruling his motion for mistrial when the prosecutor, in his opening statement informed the jury that both co-defendants—Eddie Lee Turner and Ladel Walton—confessed to the crime at the time of their arrest when the prosecutor knew that Ladel Walton was not going to be a witness and his statements were therefore inadmissible.

In his opening statement the Assistant Circuit Attorney stated: "These robbers then fled. And at various later dates, one gentleman was arrested and confessed to the crime—that's Mr. Turner—implicating Mr. Browner and Mr. Walton. Subsequently Mr. Walton was arrested and he, too, admitted to the crime." At this juncture appellant's counsel objected, asked that the jury be instructed to disregard the statement and requested a mistrial. The court then inquired: "Mr. Moss, do you expect to enter this evidence as _ _." The Assistant Circuit Attorney replied: "I didn't say the content of his confession; I just said that he admitted the crime." [2]

The office of the opening statement is to advise the jury of the facts the state expects to prove, and to inform the defendant of the contemplated course of the prosecution and the facts relied upon in support thereof so as to fairly enable the defendant to meet the charge or charges preferred against him. As a general rule, it should be brief, and general rather than detailed. It should be confined to statements based on facts which can be proved

2. At this point, out of the hearing of the jury the following colloquy took place at the Bench:

Mr. Walther: He said Turner was going to testify and now he just said they arrested Walton, and Walton is not going to testify.
Mr. Moss: The fact that he admitted to it is a fact that occurred. I didn't say this man, even though he did, I didn't say he implicated him.
Mr. Walther: That would be hearsay testimony.
Mr. Moss: That he confessed?
THE COURT: Do you have a witness?
Mr. Moss: I have a witness that will show you Walton confessed. I'm not going to ask the nature of the confession.
Mr. Walther: He is saying he has a witness to testify that Ladel Walton confessed to that. That is inadmissible to this crime. Using his confession, even implying to the jury that he admitted to it. And he doesn't have

Ladel Walton here. That is highly prejudicial; it's hearsay; it's prejudicial. The jury now knows that two, three people were arrested. And he's not even going to testify at a trial.
Mr. Moss: I would indicate that the fact—well, I've already stated my position. I don't believe it's error.
THE COURT: Has Walton been tried?
Mr. Moss: No.
THE COURT: For any phase of this?
Mr. Moss: Yes, federal.
THE COURT: Was he convicted?
Mr. Moss: Yes.
THE COURT: Was that statement used in the federal court?
I'll overrule the objection.
Then in the presence of the jury the Assistant Circuit Attorney continued: "Subsequent to Mr. Walton's arrest, Mr. Browner was then arrested in February or January of this year."

and should not include facts which are plainly inadmissible. The scope and extent of the opening statement is largely within the discretion of the trial court, and the trial court must necessarily rely upon the good faith of counsel in making their opening statements to a jury as to material facts they intend to prove. The mere fact that no evidence is adduced as to some of the precise facts related to the jury in the opening statement is not sufficient to constitute error so prejudicial as to require the reversal of a conviction, except where it can be established, directly or by inference, that counsel making said statement had not intended to, or knew that he could not, produce testimony to support said statement when made. *State v. Horn*, 498 S.W.2d 771, 774[1] (Mo.1973); *State v. Feger*, 340 S.W.2d 716, 724–725[12–16] (Mo.1960). The question is whether counsel acted in good faith when he made the opening statement, and could reasonably believe that the evidence could and would come in during the trial. If, at the time of the opening statement counsel knows that he cannot produce the only witness who can furnish the particular facts in support of his opening statement, it is objectionable for him to indicate in opening statement that such evidence will be adduced at trial. *State v. Stillman*, 310 S.W.2d 886, 888[2] (Mo.1958). And if the evidence would be plainly inadmissible upon objection, it should not be included in the opening statement. All attorneys, including prosecuting attorneys, are presumed to have knowledge of the law, including the rules of evidence applicable to the trial of criminal cases, and even where the prosecutor is presumed to have acted in subjective good faith in making unprovable statements, where that faith is founded on deliberate disregard of the rules of evidence or ignorance thereof, it should not be concluded that he acted on reasonable grounds for supposing that he would be able to show the facts stated in his opening statement. *State v. Hicks*, 535 S.W.2d 308, 311–313 (Mo.App.1976).

As noted in *Hicks*, in many cases where this question has been raised the question has been whether the prosecutor has acted in good faith and with reasonable grounds for supposing that he will be able to show the facts stated; however, where improper statements result in actual and real prejudice to the defendant thereby depriving him of a fair and impartial trial, the prosecutor's good faith should be of slight concern in deciding the question of error. Where the prosecutor's actions are prejudicial and founded upon a deliberate disregard of well known rules of evidence it should not be concluded that he acted on reasonable grounds for supposing that he would be able to show the facts stated in his statement.

In the trial court appellant's objection to this portion of the state's opening statement was that any confession by Mr. Walton was inadmissible because it was hearsay. In his Motion for New Trial his Point is stated as follows:

> The Court erred in not granting defendant's Motion for Mistrial when during the State's opening statement the State's attorney said a co-defendant had been arrested and confessed the crime, when the Circuit Attorney had no intention of calling this co-defendant as a witness and knowing that the statements of a co-defendant are inadmissible against another, thereby prejudicing the defendant.[3]

On appeal, the appellant argues that this statement was highly prejudicial to him for two reasons: "(1) the confession is hearsay, and falls within no exception to the exclusionary rule; and (2) the confession of a co-defendant cannot be received against defendant at trial." The state argues that reference to Mr. Walton's confession was made in good faith while attempting to fairly outline the proof which could arguably be adduced at trial and, if erroneous, constitutes harmless error in view of the overwhelming evidence of guilt adduced at

---

**3.** On appeal, although reference is made to the statement concerning Mr. Taylor's confession of the crime and his implication of appellant

therein, we do not consider it because not raised in this Motion for New Trial.

trial so that it does not warrant reversal of the conviction on appeal.

Of the cases decided by the appellate courts of Missouri, the closest in facts to this case is *State v. Minor*, 556 S.W.2d 35 (Mo. banc 1977), vacated on other grounds sub nom. *Lee v. Missouri*, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979). In *Minor*, the question was whether a prosecutor's remark during the course of opening statement that defendant's companion admitted complicity in the robbery constituted grounds for reversal of a conviction of the defendant. Defendant's counsel had objected and requested a mistrial, but the trial court refused to grant the requested mistrial although the prosecutor was admonished, out of the hearing of the jury, not to "make any more statements like that." The court said: "Our function is to determine whether as a matter of law, the trial court abused its discretion to the prejudice of the defendant in refusing to grant a mistrial." 556 S.W.2d 39. Because the prosecutor's somewhat ambiguous comment was not followed by further objectionable reference in opening statement, during testimony or in closing argument, the trial court observed the incident and was in better position to assess its effect and determine measures necessary to cure it, and the evidence of guilt of the defendant was strong, the court held the prejudice "spawned" by the prosecutor's improper remarks did not warrant reversal.

As in *Minor*, the state did not introduce, nor seek to introduce, the alleged confession of Mr. Walton. Unlike Mr. Turner, he did not testify at trial for the state. His name was not endorsed on the indictment as a witness for the state.[4] He was not named as an accomplice of the defendant in the indictment charging the crimes for which appellant was tried and convicted. However, the ease with which the state has been permitted to endorse witnesses at the last moment would not necessarily rule out the possibility that the state did intend to call him and produce him at trial as a state's witness when the opening statement was made. The only evidence that the Assistant Circuit Attorney knew at the time he made this statement that he did not intend to call Mr. Walton as a witness is the statement of defense counsel that this was so. This is not sufficient for us to conclude that the Assistant Circuit Attorney had no intention of calling Mr. Walton as a witness when he made his opening statement.

■ However, we deduce from the exchange between counsel and the trial court that it was the Assistant Circuit Attorney's position that the fact that Mr. Walton made a confession of his participation in the crime was a "fact" which could be developed in the trial, even though the contents of the alleged confession were inadmissible as hearsay, and even though Mr. Walton did not testify for the state. We disagree.

We are dismayed by what we conclude to be a thinly veiled attempt by an experienced prosecutor to inject into appellant's trial the fact that an accomplice had admitted his participation in the crime for which appellant was on trial, when he should have known—and we believe did know—that he was thereby attempting to evade the impact of a well known and fundamental rule of evidence and do indirectly what he could not have done directly.

■ We have here a trial in which the appellant alone was charged in the indictment and, alone, was on trial. It is a fundamental principle of our law that every defendant is entitled to a separate trial, a

---

4. We were also unable to find endorsed as a witness on the indictment in this case the name of Eddie Turner, the accomplice who appeared at trial and testified for the state after working out a "deal" with both the state and federal authorities in return for his testimony. He described in detail the robbery of the bank on July 22, 1975, how the robbers were attired, their preparation for the robbery, the incident itself, the fact that there was a shooting and that immediately thereafter he observed the appellant running to the door of the building, and their escape. He further testified that appellant told him that he shot the guard but that he said nothing about shooting the other man in the bank. He also described the splitting of the loot. The details of the questioning by police officers were also developed. The right of the state to call him as a witness is not before us, however.

right recognized by Rule 25.07(a) and § 545.880 wherein it is provided that when two or more defendants are jointly charged with the commission of a felony, any one defendant, before announcing ready for trial at any term of court, shall, upon request, be tried separately. The same principle which has held it error to show in evidence or to tell the jury that a jointly accused defendant has been convicted, pled guilty or been acquitted of the same crime for which the defendant is on trial, applies to this situation. *State v. Aubuchon*, 381 S.W.2d 807, 815–816[14, 15] (Mo.1964). In reaching its holding in *Aubuchon*, the court reasoned that the theory of our statute abolishing the distinction between principles and accessories, § 566.170 (now § 562.041), is that every defendant who joins in the commission of a crime is liable, *on his own*, as a principal; and he is also entitled to be tried *on his own* without having his guilt prejudged by what happened to a co-defendant. As was said in *Aubuchon*, 381 S.W.2d at 816: "Were this not the law, the value of a defendant's right to a separate trial . . . might be considerably dissipated."

▮ The fact that Mr. Walton, an accomplice, admitted his participation in the commission of the crime is not competent evidence that this defendant too is guilty of said crime. Had the state attempted to introduce into evidence Mr. Walton's statement admitting the crime it would have been subject to an objection that it was hearsay, unless it could have been brought in under one of the exceptions to the rule. The state has not contended that this statement was admissible because it was made in furtherance of a conspiracy or as a part of the res gestae. Once a common enterprise is ended, whether by accomplishment or abandonment, no one of the joint actors is permitted to affect the others by any subsequent act or declaration of his own. The admission made by Mr. Walton out of court, not under oath and out of the presence of the appellant and some time after the commission of the crime was not admissible as evidence against the appellant. *State v.*

*Newell*, 462 S.W.2d 794, 796[1] (Mo.1971); *State v. Cross*, 357 S.W.2d 125, 128[10] (Mo. 1962); *State v. Chernick*, 278 S.W.2d 741, 748[6] (Mo.1955); *State v. Hill*, 352 Mo. 895, 179 S.W.2d 712, 716[7, 8] (1944).

▮ Since the admission of Mr. Walton, made out of the presence of the appellant, was inadmissible, the fact that it was made is likewise inadmissible, it is not binding on the appellant, and should not have been referred to in the state's opening statement.

Furthermore, by taking this tack and relating to the jury in his opening statement the "fact" that Mr. Walton had "admitted to the crime" the Assistant Circuit Attorney evaded a major safeguard against the improper use of a confession, i. e. a preliminary determination by a trial court that the "admission" or confession was freely and voluntarily given after the person making the admission or confession had been advised of his legal rights. *Sims v. State of Georgia,* 385 U.S. 538, 543, 544, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). Concern about this safeguard most likely triggered the inquiry by the trial court whether the admission of Mr. Walton had been used in the federal court.[5] Even if such inquiry had been made in federal court, that would not have made it admissible in this trial against appellant.

Mr. Justice White, in his dissent in *Bruton v. United States,* 391 U.S. 123, 141, 142, 88 S.Ct. 1620, 20 L.Ed.2d 476, said:

As to the defendant, the confession of the codefendant is wholly inadmissible. It is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. Furthermore, the codefendant is no more than an eyewitness, the accuracy of whose testimony about the defendant's conduct is open to more doubt than would be the defendant's own account of his actions. More than this, however, the statements of a codefendant have traditionally been viewed with special suspicion. . . . Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the de-

5. See footnote 2, supra.

fendant said or did are less credible than ordinary hearsay evidence . . . the codefendant's admissions cannot enter into the determination of the defendant's guilt or innocence because they are unreliable . . .

Although an accomplice, Mr. Walton, could if he were so willing, have been permitted to testify as any other eye-witness to the circumstances of this crime. So far as we can ascertain from this record on appeal the Assistant Circuit Attorney never had any intention of calling him as a state's witness when he made his opening statement, although he never clarified this question, and Mr. Walton did not testify in the case. If good faith alone were the test, we would find the Assistant Circuit Attorney failed the test in this instance.

█ We hold that the trial court erred in allowing the Assistant Circuit Attorney's statement to stand in the face of appellant's objection. The question now becomes whether the appellant was prejudiced by the trial court error in denying his motion for new trial and whether the appellant is therefore entitled to have his conviction set aside and this cause remanded for a new trial. We have concluded that in view of the strong evidence of appellant's guilt, it was harmless error. In order to reach this conclusion this reviewing court must find from the record as a whole that the jury either disregarded or could not have been influenced to appellant's prejudice by this error of the trial court. *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo. banc 1972). We reach this conclusion based upon the following.

The jury was instructed just minutes prior to the Assistant Circuit Attorney's opening statement that opening statements are not evidence. MAI–CR 2.02.

After the conclusion of the opening statement no further reference was made to Mr. Walton's "admission to the crime."

The state's evidence was very strong. Both victims of the assault testified and identified appellant as the man who shot them. Another witness, Donna Harris, who was seated in an automobile outside the bank and observed the three men both enter and leave the bank building, also identified the appellant as one of those three men she had so observed, and described the clothing he was wearing at the time. The jury was further aided by viewing a sixteen millimeter film of the perpetration of the robbery taken by the bank surveillance camera and some still photographs developed from specified frames of the moving picture film.

One of the participants in the commission of the robbery, Eddie Turner, testified and detailed the circumstances surrounding the shootings and the robbery of the bank. He identified the appellant as one of the participants in the robbery. Although he did not see the appellant actually shoot anyone, he heard the shots and when he looked in the area from whence he heard them he observed appellant running for the door of the bank. Appellant arrived at the door first and as Turner arrived there the appellant pushed him back and told him that since they were in the bank they should get the money.

█ In a close case error which might call for reversal may be disregarded as harmless when the evidence of guilt is strong. *State v. Degraffenreid,* 477 S.W.2d at 65[15]. The evidence of appellant's guilt was strong and the error in the Assistant Circuit Attorney's opening statement was harmless and does not entitle appellant to have his conviction set aside and a new trial ordered. *State v. Minor,* 556 S.W.2d 35 (Mo. banc 1977).

We rule this point against appellant.

Appellant's third and fourth Points Relied On concern alleged errors referable to an escape by appellant from the City Jail of the City of St. Louis on May 23, 1976, after his conviction on federal charges arising out of this incident and prior to his trial on these state charges.

His third Point Relied On is that the trial court erred when it allowed Samuel Greene,

the Warden of the City Jail, to testify over objection, that appellant had escaped from jail because (1) he was in jail by reason of his conviction on the federal charges arising out of this robbery and (2) the conditions in the jail had been declared unconstitutional by a federal court.

■ *State v. Tyler,* 306 S.W.2d 452 (Mo. 1957) has been cited as authority for the proposition that evidence of flight or escape is admissible for the purpose of raising a presumption of consciousness of guilt of the crime for which a defendant is on trial. This is so regardless of the fact that at the time of said escape he was in custody on other charges which were still pending. In those circumstances, the *Tyler* court said that the rule excluding said evidence confused the admissibility of the evidence with the weight to be given by the jury to the evidence adduced as to the circumstances of defendant's confinement and escape when he is confined on two or more charges at the time, "except in those instances where the trial court, as with any other issue, should declare as a matter of law that the evidence is insufficient for a jury reasonably to find that defendant escaped or fled wholly or partially on account of the pendency of the charge on trial, the question of whether an escape shows a consciousness of guilt of the offense on trial is a jury question." 306 S.W.2d at 459.

What *Tyler* did not answer, however, is who bears the burden of presenting sufficient evidence to make the issue one for the jury. If we assume, without deciding, that to entitle the state to the benefit of this presumption of the consciousness of guilt all it need show is the fact of escape, then it might appear that the burden of coming forward with the evidence to rebut this presumption shifts to the defendant. The defendant then should be permitted to present evidence to explain that his escape was not due to a consciousness of guilt of the crime for which he was on trial but for other reasons. With the record in this state, it would then be for the jury to consider the evidence in toto and apply or refuse to apply the presumption. We have found a number of Missouri cases stating the law of Missouri in this respect, but not one has decided upon whom the burden of proof on this issue rests.

Appellant's attack on the admissibility of this evidence is directed at the possibility that his escape may have been occasioned by his conviction on federal charges for bank robbery arising out of the incident of the robbery of the bank during which these shootings took place and was not the basis for the presumption of consciousness of guilt of these assault charges.

There is no evidence in this record to support the appellant's contention that at the time of his escape he was in custody by reason of a federal conviction. However, when the Assistant Circuit Attorney announced that he was calling "Sam Greene" as his next witness defense counsel objected at the Bench and out of the hearing of the jury to this witness testifying about evidence of an escape because appellant was already a federal prisoner, having already "received time" from the federal government, and therefore the presumption aforesaid could not be drawn from appellant's escape. In response, the Assistant Circuit Attorney explained that the appellant had never been in federal custody but was always a state prisoner; that he had been released to the federal authorities only for the purpose of trial on a writ and had been returned to state custody prior to serving a sentence imposed by the federal court. Appellant's counsel replied that since appellant had been sentenced to twenty-five years by the federal court then the presumption was that he escaped to "get away from that time." However, other than these arguments of counsel there is no evidence of this sentencing.

■ Nevertheless, if, as appears, this federal conviction arose out of the same robbery in which the three assaults for which appellant was on trial here, the ques-

tion almost becomes academic. Pursuant to the authority of Rule 24.04 the shootings which occurred during the robbery were joined in a single indictment and tried at the same time. Therefore, the question whether the escape was presumptively evidence of a consciousness of guilt as to one of the crimes, and not another, loses some of its validity. In the absence of any evidence that the appellant was in custody by reason of a sentence imposed by a federal court, the jury could not consider that circumstance in determining whether to give the state the benefit of the presumption. The presumption of consciousness of guilt, if employed by the jury, would not be so prejudicial, if prejudicial at all, by reason of the single transactional factual basis out of which the charges emanated to require reversal.

However, if the burden of coming forward with evidence to avoid the presumption shifts to the defendant once the escape is shown, then he should be allowed to introduce any competent, relevant and material evidence to rebut the presumption. This requires us to consider appellant's fourth and final Point, whether the trial court erred in sustaining the prosecutor's objections to questions concerning the unconstitutional standards at the City Jail.

During cross-examination of Warden Greene appellant undertook to elicit testimony from him concerning the living conditions at the City Jail. Defense counsel developed that appellant was assigned to "administrative segregation," i. e. "isolation" and, according to the Warden, confined in a cell 2′ × 4′ × 6′ but also had access to a recreation room where a television was available to him during the daytime hours. He then inquired: "Now is the jail still under a court order from the Federal Government that it's unconstitutional?" The Assistant Circuit Attorney objected to the question on the grounds that it was irrelevant and the trial court sustained the objection. Appellant made the following offer of proof:

I make an offer of proof that the presumption is raised that he escaped because he's guilty. I propose that that presumption under the law would be just as well that the Federal Government said that's unconstitutional over there; it's unfit for human confinement. It still is. It hasn't been lifted. And they're still under constant scrutiny.

The offer of proof was overruled.

 To preserve for review the overruling of an offer of proof the facts and reasons given in an offer of proof must be sufficiently specific and detailed so as to demonstrate the relevance of the testimony the party making the offer of proof seeks to introduce into the case. *State v. Umfrees,* 433 S.W.2d 284, 286[1, 2] (Mo. banc 1968); *State v. Davis,* 515 S.W.2d 773, 775[2] (Mo. App.1974). This offer of proof does not meet these standards; it constitutes nothing but a conclusionary statement. It fails to advise the trial court when the judgment was entered by the federal court, whether appellant was confined in the jail at that time, whether the same conditions upon which the federal court made its findings still persisted, and what specific acts of the jail administration or fellow inmates made escape necessary.

The defense of "necessity" has been recognized in some jurisdictions in a prosecution for escaping from confinement. Assuming, without deciding, that the same facts which support a defense of necessity are admissible where the state seeks the benefit of the presumption of consciousness of guilt to rebut said presumption, appellant's offer of proof falls far short of demonstrating that the evidence he sought to introduce would meet those standards announced by the cases in those jurisdictions recognizing the defense. See *People v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal. Rptr. 110 (1974); *People v. Harmon,* 53 Mich.App. 482, 220 N.W.2d 212 (1974); *State v. Reese,* 272 N.W.2d 863 (Iowa 1978). In those cases it was held that to make out a defense of necessity the defendant must

show: 1) specific threats of death, forcible sexual attack or bodily injury; 2) complaints to authorities would be futile; 3) no violence against innocent persons during the escape; and 4) the prisoner reports to the authorities when he has reached a place of safety. None of these are shown in appellant's offer of proof.

We hold the point was not preserved for review because of the paucity of the offer of proof and we also hold that the trial court did not err in sustaining the objection to the question as framed.

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.