**STATE of Missouri, Respondent,**

v.

**Randy W. CHILDERS, and Paul D. Childers, Appellants.**

**Nos. WD 46144, WD 46145.**

Missouri Court of Appeals, Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Richard E. McFadin, Kansas City, for appellants.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Following a change of venue from Holt County, this case was tried to a jury in Gentry County. Appellants were convicted of manufacture and production of a controlled substance, marijuana, in violation of § 195.211, RSMo Cum.Supp.1991. Each appellant was sentenced to 10 years in the Missouri Department of Corrections. Because the issues on appeal are identical with regard to each appellant, their appeals have been consolidated in this court.

We present the evidence in the light most favorable to the verdict. According to the testimony of Trooper Wilson of the Missouri State Highway Patrol, in late May or early June 1991, property was purchased on the Northwest corner of Big Lake, known as Lot 14 Ideker's Northern Addition on a dead end lane known as Mobile Lane. Richard B. Moore conducted the negotiations for the property. Eugene Moore and Dewey D. Raxter accompanied him to the real estate office but did not go in.

Wilson later observed a brown camouflaged jeep, a blue school bus with a South Carolina dealer plate, a trailer home, and several small out buildings on the property. On July 13, appellant Paul Childers arrived at Lot 14. Paul lived in Clover, South Carolina and worked for United Motors. He purchased some old automobiles while in the area but indicated he did not need

titles to these vehicles. He said he would pick up the vehicles in about a week. The following day he returned to South Carolina.

On July 20, Randy Childers arrived at Lot 14 in a blue Volarie. A check of the license plate revealed it was owned by United Motor Company of Clover, South Carolina. Paul Childers, Holdrege Pope and Richard Wallace were also in the car. Trooper Wilson observed Paul Childers remove all of the articles from the trunk of the Volarie and spray the trunk with an unidentified aerosol can.

At one point during surveillance by the highway patrol, Wilson broadcast his position. Paul and Randy Childers then conferred and Randy walked to the window of the mobile home from which Wilson was making his observations and looked in. Later, as the jeep was leaving the lot, Wilson again broadcast his position. All four occupants of the jeep turned their heads and looked to where Wilson was positioned.

On the evening of July 20, Randy Childers, David Childers, Richard Wallace and Holdrege Pope left in the Volarie and Raxter and Eugene Moore left in the jeep. They went into the Missouri River bottoms. The next day, officers located two areas in the river bottoms where marijuana had been stripped from standing plants and observed fresh tire tracks nearby.

At about 4:00 a.m. on July 21st, Paul Childers and Raxter left Lot 14 in the Volarie. Troopers lost contact with them but determined they must have gone into the river bottom. Later at about 4:45 a.m. the officers observed the Volarie come back to Lot 14 and saw individuals carrying bulky objects into the bus and the trailer. Officers observed Paul Childers leave the school bus and walk to the trailer. Later Randy Childers left the bus and went into the trailer. David Childers then went fishing and Randy Childers went to make a phone call.

The officers obtained a search warrant and returned to lot 14 at 6:00 p.m. on July 21, 1991, to execute the warrant. They found thirty-six large grocery bags of green leafy material, eleven in the trailer and twenty-five in the bus. A silvery green trash bag, which the trooper stated contained marijuana residue, was in the trunk of the Volarie. A kitchen knife with green residue on it was on the kitchen table. A clear plastic baggy containing a substance believed to be marijuana was in the middle bedroom. A pair of shears was on a table in the trailer, and a police scanner was in the master bedroom of the trailer.

Appellants both testified they came north to purchase about $1,000.00 worth of old cars, but Paul Childers had only "a couple hundred dollars with him." Paul Childers said he did not see any marijuana while at Lot 14 but did vaguely remember seeing some bags in the bus. Randy claimed he knew what marijuana looked like but did not use it. He too saw the bags in the bus but did not know they contained marijuana.

Appellants allege as points of error that the trial court erred by (1) refusing to permit broad voir dire questioning; (2) denying appellants' motion to quash the search warrant; 3) denying appellants' motion to sever their trial from that of joint defendant Raxter; 4) overruling appellants' objection to introduction of certain state exhibits; 5) failing to grant a new trial because of insufficient evidence and 6) overruling appellants' objections to Instructions 5, 8 and 17.

As to Point I, appellants' attorney had represented an individual of some notoriety in Northwest Missouri.[1] Appellants' counsel had been interviewed on television and a book had been written concerning his client and the events surrounding his death. Counsel sought to inquire in voir dire if this fact would prejudice the jury against his current clients. Juror Bryson stated that, just by seeing appellants' counsel there, she thought the case must be "something big." Bryson also stated,

---

1. Appellants' attorney, Richard McFadin, represented the individual who was gunned down on the main street of Skidmore, Missouri, in broad daylight. No one was ever charged with the killing.

"Well, I read the book, and I saw you on T.V. That's about it, and I read the newspaper, the daily newspaper, St. Joe paper."

When appellants' counsel attempted to question Bryson about her reference to "something big," the prosecuting attorney intervened and the court then instructed appellants' attorney to inquire whether the prejudice of any venire person against counsel would prejudice the rights of his clients. Appellants' counsel then inquired of Bryson if she would be prejudiced against him and deny his clients a fair and just verdict because of what she may have read or heard about him. She said she would not. Counsel then pursued this line of voir dire through the entire panel.

Appellants allege that the trial court should have permitted a broader voir dire and erred by not granting their motion to quash the panel and declare a mistrial. Appellants allege equivocal answers by certain veniremen. A thorough review of the record fails to disclose the "equivocal answers" of which appellants complain. Initially we note that appellants did not request the panel be quashed or seek a mistrial.

■■■ "Control of voir dire examination is within the discretion of the trail court." *State v. Woltering,* 810 S.W.2d 584, 588 (Mo.App.1991). Such discretion will not be disturbed on appeal absent a showing of manifest abuse. *State v. Holt,* 758 S.W.2d 182, 186 (Mo.App.1988). The party asserting manifest abuse must carry the burden of demonstrating a real probability he was thereby prejudiced. *Mays v. State,* 810 S.W.2d 68, 70 (Mo.App.1990). Appellants' attorney failed to pursue this alleged error. The trial court did not abuse its discretion in controlling the voir dire. Accordingly, appellants' Point I is denied.

■■■ Appellants next complain that the trial court erred in not sustaining their motion to quash the search warrant. Appellants filed their motion at a pre-trial hearing. It was overruled. When Trooper Wilson began testifying about items seized during the search, no objection was made by the appellants. It is well established in Missouri that an appellant must object at trial to the admission of evidence when his motion to suppress has previously been denied. Failure to do so preserves nothing for appeal. *State v. Fields,* 636 S.W.2d 76, 79 (Mo.App.1982). "[T]he trial judge should be given the opportunity to reconsider his prior ruling against the backdrop of the evidence actually adduced at trial." *State v. Sandusky,* 761 S.W.2d 710, 713 (Mo.App.1988). Appellants' Point II is denied.

■■■ In Point III, appellants complain that the trial court erred in not severing their trial from that of co-defendant Raxter. Appellants orally moved for severance on the day of trial and the trial court overruled their motion. Rule 24.06(b) governs their request for severance because the defendants were all charged in the same indictment. Rule 24.06(b) states:

(b) If two or more defendants are charged in an indictment or information, all defendants shall be tried together unless the court orders a defendant to be tried separately. A defendant shall be ordered to be tried separately only if the defendant files a written motion requesting a separate trial and the court finds a probability of prejudice exists or;

(1) The defendant is subject to assessment of punishment by the jury and the defendant shows a probability of prejudice would result from this fact if he is not tried separately; or

(2) There is, or may reasonably be expected to be, material and substantial evidence not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered; or

(3) There is an out-of-court statement that is not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered unless the court finds the out-of-court statement can be limited by eliminating any reference to the defendant; or

(4) A separate trial is necessary to a fair determination of whether the defendant is guilty.

There is no doubt that appellants failed to comply with Rule 24.06(b). We note gratuitously that the trial court has considerable discretion in granting or denying such a motion. *United States v. Reeves*, 674 F.2d 739, 744 (8th Cir.1982). Appellants failed to demonstrate that the defenses of the defendants were irreconcilable. *State v. Oliver*, 791 S.W.2d 782, 786 (Mo. App.1990). They did not establish that the jury could not be expected to compartmentalize the evidence as it related to each defendant. *State v. Mahurin*, 799 S.W.2d 840, 842–43 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991).

Appellants cite as supportive of their position *State v. Browner*, 587 S.W.2d 948 (Mo.App.1979). *Browner* refers to a defendant having a right to be tried separately as guaranteed by § 545.880. Section 545.-880 is as follows:

1. Notwithstanding supreme court rule 24.06, whenever two or more defendants are jointly charged in an indictment or information, the court shall order both or all defendants tried together. In the event two or more defendants are charged in separate indictments or informations with offenses, where both the defendants and the offenses could have been joined in the same information or indictment, upon motion of one or more defendants or on motion of the state, the court may order the indictments or informations or both to be tried together.

2. If, upon written motion of the defendant, the court finds that the probability for prejudice exists in a joint trial, the court shall order the severance of defendants for trial. The court shall find that the probability for prejudice exists if:

(1) At least one but not all of the defendants jointly charged is, if convicted, subject to jury assessment of punishment; the defendant or defendants subject to jury assessment of punishment shall have the burden of showing the probability of prejudice if tried jointly;

(2) There is, or may reasonably be expected to be, material and substantial evidence admissible against less than all of the joint defendants;

(3) There exists an out of court statement of a codefendant which makes reference to another of the joint defendants, but is not admissible against that defendant, and if the statement cannot be properly limited so as to eliminate reference to the complaining defendant;

(4) Severance of the joint defendants is necessary to achieve a fair determination of guilt or innocence of any defendant.

Further, in *Browner*, the defendant alone was charged in the indictment and alone was on trial. Thus, the facts of *Browner* are quite different from those of the instant case.

We point out that none of the defendants herein filed a written motion for severance. Rather, they waited until the case was ready for trial with the jury selected before moving for severance. Mr. Lance, attorney for defendant Raxter, stated, "Yes, Judge. I had one other oral motion ... I renew my motion for a separate trial." Appellants' attorney then stated that his clients would also like to have a separate trial. If any written motions for severance were filed, neither the legal file nor the transcript reflect this filing. It is appellants' responsibility to file a complete record on appeal. *Arnold v. State*, 789 S.W.2d 525, 526 (Mo.App.1990). Appellants' Point III is denied.

■ Appellants next allege the trial court erred in overruling appellants' objection to Exhibit 29. Further in Point IV, "appellants submit state's evidence Exhibit No. 23, a money order, which was sent to Eugene Moore, which allegedly contained appellant's [sic] telephone number, in that appellants were not informed of states [sic] intention to use said order prior to trial and which money order was subsequently found not to be in the same condition as the original, which the state failed to correct, which inclusion of said money order and Exhibit No. 29, violated appellants' constitutional rights."

Exhibit 23 is a $400.00 Western Union money order payable to Eugene Moore from Mike Huffstetler. Appellants fail to

allege that the trial court erred or abused its discretion in admitting Exhibit 23. Rule 30.06(d) requires that "points relied on shall state briefly and concisely what actions of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." This portion of Point IV fails to preserve any error that the trial court may have committed by receiving States Exhibit 23 in evidence.

Appellants allege they first learned of Exhibit 23 on the day of trial. The exhibit contains the silent home phone number of appellant Paul David Childers as well as his work phone number at United Motors. The Exhibit was offered apparently to establish that Childers knew Moore. We note that appellants attached a copy of a money order to their motion for a new trial and allege it is different from Exhibit 23. This document is not self proving. They do not show where it came from or that it is a fair and accurate copy of Exhibit 23. Thus, since it was not substantiated by the record it cannot be considered. *State v. Bluitt*, 592 S.W.2d 752, 754 (Mo. banc 1980).

■ Exhibit 29 is a bag containing samples of marijuana taken from each of the thirty-six bags of green leafy substance seized by Trooper Wilson. Appellants argue the chain of custody was broken. Trooper Wilson testified that the samples sent to the laboratory also contained residue from the trash bag found in the trunk of the Volarie. The total weight of all the marijuana seized was 85.7 pounds. Wilson testified it was not practical to send all 85.7 pounds for analysis. We agree.

Wilson testified that, after placing the samples in the trash bag, he sealed it with red tape. The excess marijuana was placed in the property room. The bag with the samples was sent to the laboratory for analysis. Nicholas Gerhardt, forensic chemist for the Missouri State Patrol lab in St. Joseph testified he received Exhibit 29 and it was sealed with the red tape as Wilson had described. After performing his tests on Exhibit 29, Gerhardt determined the contents to be marijuana. He resealed Exhibit 29 and placed it back in the evidence locker. In doing so, he initialed the sealing tape. Gerhardt weighed the marijuana and bag and the total weight was 399 grams. He testified that the marijuana alone weighed well over 300 grams.

Appellants objected to the introduction of Exhibit 29 because the chain of custody was allegedly imperfect. The state witnesses established that what had been placed in Exhibit 29 was removed by the chemist and tested and had been continually in police custody. This provided reasonable assurance that Exhibit 29 was in the same condition as when Wilson placed it in the bag. *State v. Dee*, 752 S.W.2d 942, 948 (Mo.App.1988). The state is a not required to account for every hand that may have been involved in the custody of the evidence under the reasonable assurance standard, nor is the state required to exclude every possibility that the evidence might have been disturbed. *State v. Fels*, 741 S.W.2d 855, 857 (Mo.App.1987). The state sufficiently established that the chain of custody was unbroken. Appellants' Point IV is denied.

■ In Point V, appellants allege the trial court erred by failing to grant their motion for judgment of acquittal or motion for a new trial because there was insufficient evidence to convict appellants. On a claim of insufficient evidence, this court may neither determine credibility of the witnesses nor weigh the evidence. *State v. Smith*, 686 S.W.2d 43, 46 (Mo.App.1985). When appellate courts review the sufficiency of the evidence, they consider all substantial evidence and inferences in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Naucke*, 829 S.W.2d 445, 459 (Mo. banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 427, 121 L.Ed.2d 348 (1992). This court must accept the jury's obvious determination of facts gleaned from conflicting testimony. The jury's findings are conclusive. *Id.* The reviewing court must accept all evidence as true that tends to support the defendant's guilt and accept all inferences which support the verdict. *State v. Dagley*, 793 S.W.2d 420, 423 (Mo.App.1990). While so doing, this court will disregard all

evidence contrary to the verdict. *State v. Middaugh,* 802 S.W.2d 570, 572 (Mo.App. 1991); *State v. Mallett,* 732 S.W.2d 527, 530 (Mo. banc), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).

 Appellants' reasons for being at Big Lake were heard by the jury, their explanations were ingenious and well crafted; however, the jury chose not to believe them. *State v. Villa–Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992). The appellate court's review is limited to determining whether such evidence existed from which the jury might have found the defendants guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). From the evidence presented, the jurors could have reasonably concluded that the appellants came from South Carolina to harvest Missouri marijuana and that they were aided by the other individuals. Appellants' Point V is denied.

In appellants' sixth and final point, they challenge instructions 5, 8 and 17. We note at the outset that appellants have failed to properly preserve this point for appellate review. If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief. Rule 30.06(e). Not only do appellants fail to set forth the instructions as required, the challenged instructions are not contained in either the transcript or the record on appeal.

In response to the state's argument that the point was not properly preserved, appellants state in their reply brief that they "filed a motion for leave of court to include said instructions in the legal file and said certified instruction [sic] are attached to Appellants [sic] Reply Brief." A thorough review of this court's record fails to locate any such motion. Copies of the instructions are, however, attached to appellants' reply brief.

Pursuant to Rule 30.20, this court has the discretion to consider plain errors that affect substantial rights upon finding manifest injustice or miscarriage of justice resulted therefrom. *State v. Harnar,* 833 S.W.2d 25, 27 (Mo.App.1992). On the record presented, there is no plain error regarding the challenged instructions. Accordingly, appellants' Point VI is denied.

The judgment of the trial court is affirmed.

All concur.